**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

**FILED APRIL 12, 2005**

ECHELON HOMES, L.L.C.,

Plaintiff/Counter-Defendant-Appellee,

v                                                    Nos. 125994, 125995

CARTER LUMBER COMPANY,

Defendant/Counter-Plaintiff-Appellant.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

MCL 600.2919a provides that a person who buys, receives, or aids in concealing stolen, embezzled, or converted property can be held liable for treble damages if he *knew* that the property was stolen, embezzled, or converted. The sole issue before this Court is whether constructive knowledge that property is stolen, embezzled, or converted is sufficient to impose liability under MCL 600.2919a. We hold that under the plain language of the statute, constructive knowledge is not sufficient to impose liability under MCL 600.2919a.

Therefore, we reverse the judgment of the Court of Appeals and hold that the statute requires exactly what it says—that the person knew that the property had been stolen, embezzled, or converted.

We remand this case to the trial court for a hearing on whether there is a material issue of fact regarding whether there is sufficient circumstantial evidence to establish that defendant knew the property was stolen, embezzled, or converted.

## FACTS and PROCEDURAL HISTORY

Plaintiff Echelon Homes, L.L.C., employed Carmella Wood as its bookkeeper and office manager from 1997 to 2000. During her employment, Wood engaged in fraudulent schemes against Echelon, including, but not limited to, forging company checks to herself, opening company credit cards in her name, and opening lines of credit to herself in Echelon's name. During this time, Wood opened an unauthorized account with defendant Carter Lumber Company and purchased approximately $87,000 in materials used to remodel her home and her brother's home. Echelon did not discover Wood's fraudulent activity until June 2000, when it learned that Wood had embezzled over $500,000. When Wood's embezzlement was discovered, Echelon had an outstanding invoice from Carter for approximately $27,000.

Carter had extended a line of credit to Wood under Echelon's company name. Wood forged the credit application to initially obtain the account. Subsequently, Carter continued to increase the line of credit to Wood, to the point that Echelon became one of its largest credit customers. Carter never verified that Echelon had in fact authorized the credit account, nor did it ever verify that Wood had the authority to receive credit increases. Carter delivered goods to Wood's relatives and allowed her relatives to pick up goods without verifying that they were authorized by Echelon. Carter signed lien waivers for goods purportedly delivered to Echelon for specific jobs when Carter knew it had never delivered goods for those jobs. Wood has testified that she was not working with Carter, or any of Carter's agents, and that she was "scamming" Carter as well.

Echelon filed suit against Carter under various theories, including MCL 600.2919a, aiding and abetting conversion. Carter filed a counterclaim against Echelon for the $27,000 outstanding invoice. The trial court granted both parties' motions for summary disposition. Both parties appealed. The Court of Appeals affirmed the summary dismissal of Carter's claims against Echelon, but reversed the summary dismissal of two of Echelon's claims

3

against Carter. *Echelon Homes, LLC v Carter Lumber Co*, 261 Mich App 424; 683 NW2d 171 (2004).

Carter filed an application for leave to appeal with this Court. This Court scheduled oral argument on the application for leave to appeal, limited to whether the Court of Appeals correctly held that constructive knowledge was sufficient to impose liability under MCL 600.2919a. *Echelon Homes, LLC v Carter Lumber Co*, 471 Mich 916 (2004).

ANALYSIS

The issue before us is whether constructive knowledge is sufficient to impose liability under MCL 600.2919a, which requires that a person "knew" that property was stolen, embezzled, or converted in order to be held liable for aiding and abetting.

This is a question of statutory interpretation, which this Court reviews de novo. *Stozicki v Allied Paper Co, Inc,* 464 Mich 257, 263; 627 NW2d 293 (2001). In reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. *People v Morey,* 461 Mich 325, 329-330; 603 NW2d 250 (1999). "We begin by examining the plain language of the statute; where that language is unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written." *Id.* at 330. "We

4

must give the words of a statute their plain and ordinary meaning . . . ." *Id.* The plain and ordinary meaning of words can be ascertained by looking at dictionary definitions. *Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002).

**A**

MCL 600.2919a states:

> A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property *knew* that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. [Emphasis added.]

A plain reading of this statute indicates that a person must know that the property was stolen, embezzled, or converted in order to be held liable. That the person "should have known" is not sufficient to impose liability under the statute.

The term "know" does not encompass constructive knowledge, that one "should have known." Black's Law Dictionary (8th ed) defines "knowledge" as "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." "Constructive knowledge," on the other hand, is defined as "[k]nowledge that one using

5

reasonable care or diligence should have, and therefore that is attributed by law to a given person." *Id.*

Constructive knowledge is a distinct concept from knowledge, and cannot replace the requirement of knowledge in a statute.  The Legislature uses the terms "knew" and "should have known" to indicate a difference between knowledge and constructive knowledge.[1]  We found thirty-eight statutes that refer to constructive knowledge, using a variation of the phrase "knew or should have known."  See MCL 205.14(2)(d) (a tobacco seller or distributor can be

---

[1] The dissent argues that the Legislature's frequent use of the term "actual knowledge" refutes our position that the term "knew," as used in this statute, is not satisfied by constructive knowledge.  But the dissent overlooks the fact that the Legislature uses the terms "knowledge" and "knew" very differently.

There are some thirty-eight statutes that use a variation of the phrase "knew or should have known"; for those statutes constructive knowledge is sufficient.  By contrast, there is only one statute, MCL 554.636, that uses the phrase "actually knew."  (Ten statutes, including this one, use the bare word "knew.")  The Legislature's ability to denote the type of knowledge required is better evidenced by the thirty-eight statutes in which it explicitly called for constructive knowledge than by the one occasion in which it used the term "actually."

The dissent cites forty-eight statutes in which the Legislature uses the phrase "actual knowledge."  By contrast, there are only seven statutes that refer to "actual or constructive knowledge."

The multiple citations to statutes referencing "actual knowledge" do not affect the correct interpretation of the statute at issue here, which uses the term "knew."

held liable for illegally selling tobacco products if it "knew or should have known that the manufacturer intended the tobacco product to be sold or distributed" outside the prescribed area); MCL 691.1417(3)(c) (to receive compensation for property damage or physical injury from a governmental agency the claimant must show that "[t]e governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect"); MCL 565.831(4) (a person who provides a statement used in an application for registration or property report is liable only for false statements and omissions in his statement and only "if it is proved he knew or reasonably should have known of the existence of the true facts by reason of which the liability is alleged to exist"); MCL 445.1902(b)(ii)(B) (misappropriation of a trade secret includes one who disclosed or used a trade secret of another when, at the time of disclosure or use, the person "knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it").

Relying on *People v Tantenella*, 212 Mich 614; 180 NW 474 (1920), Echelon argues that this Court has historically used constructive knowledge to impose liability under a criminal aiding and abetting statute.

7

In *Tantenella*, the defendant was charged with receiving a stolen car. The defendant claimed that he did not know that the car was stolen. However, the Court determined that the defendant had sufficient guilty knowledge to be guilty of the crime. *Id.* at 620. The *Tantenella* Court stated, "Guilty knowledge means not only actual knowledge, but constructive knowledge, through notice of facts and circumstances from which guilty knowledge may fairly be inferred." *Id.* at 621. The Court went on to list facts that implied the guilty knowledge of the defendant: receiving possession of the car hours after it had been stolen, driving to Chicago with the suspected thief, changing the motor number and license number, claiming ownership, producing a fraudulent bill of sale, and giving authorities conflicting names. *Id.* All these facts were used by the Court to determine that the defendant was guilty of receiving stolen property.

Although the *Tantenella* Court characterized its analysis of these facts as examining the defendant's constructive knowledge, the Court was, in fact, determining that the defendant had knowledge, proven by circumstantial evidence, that the car was stolen. This is shown by the Court's extensive analysis of the facts that led it to believe that the defendant had knowledge. The *Tantenella* Court used the term "constructive knowledge" synonymously

**8**

with knowledge proven through circumstantial evidence. Thus, the Court's use of the term "constructive knowledge" is a misnomer; what the Court really meant was knowledge proven by circumstantial evidence.

The *Tantenella* Court's holding regarding "constructive knowledge" has correctly been interpreted by subsequent courts to mean actual knowledge proven by circumstantial evidence. See, e.g., *People v Westerfield*, 71 Mich App 618; 248 NW2d 641 (1976)(the defendant was found guilty of receiving a stolen car on the basis of suspicious circumstances surrounding his purchase); *People v Blackwell,* 61 Mich App 236, 240-241; 232 NW2d 368 (1975) ("although the term may convey a special meaning to lawyers, it is apparent that the *Tantenella* Court and the others which have used the identical instructions since *Tantenella* used the term "constructive knowledge" as a shorthand way of saying that this element of the charge may be proven circumstantially"); *People v White*, 22 Mich App 65, 68; 176 NW2d 723 (1970) (the defendant was charged with knowingly concealing stolen property on the basis of circumstantial evidence); *People v Keshishian*, 45 Mich App 51, 53; 205 NW2d 818 (1973) (circumstantial evidence sufficient to make prima facie showing of guilty knowledge).

We hold that, under MCL 600.2919a, constructive knowledge is not sufficient; a defendant must know that the property was stolen, embezzled, or converted. To the extent that *Tantenella* stated otherwise, it is overruled. But consistent with the actual holding in *Tantenella,* a defendant's knowledge that the property was stolen, embezzled, or converted can be established by circumstantial evidence.

B

Echelon also argues, and the Court of Appeals agreed, that Carter was required to make a reasonably diligent inquiry into whether Wood was authorized to open credit accounts and conduct transactions in Echelon's name. In support of this argument Echelon relies on *In re Thomas Estate*, 211 Mich App 594; 536 NW2d 579 (1995). In *Thomas,* a bank improperly released funds to the former guardian of a minor, despite the fact that her guardianship had been terminated. At the time of the transaction, the bank had in its possession a letter that explicitly stated that the guardianship had been terminated. The bank was found liable for the improper release, and was required to compensate the estate of the minor for the loss.

The Court of Appeals in the present case reasoned that just as the bank in *Thomas* was required to make a diligent inquiry about the authority of the guardian, Carter was

**10**

required to inquire about Wood's authority concerning Echelon. We disagree.

*Thomas* dealt with MCL 700.483, which in relevant part before its repeal stated: "The fact that a person knowingly deals with a conservator does not alone require the person to inquire into the existence of a power or the propriety of its exercise, *except that restrictions on powers of conservators which are indorsed on letters as provided in section 485 are effective as to third persons.*" (Emphasis added.) This statute explicitly stated that a bank *does not* need to make further inquiry into the powers of a conservator except when there are letters that restrict the conservator's powers. In *Thomas*, there were letters—letters that explicitly stated the date when the guardianship was to terminate. The bank did not consult these letters when it statutorily had an affirmative duty to do so. As a result, the bank was held liable for improper disbursement of funds.

But the statute in the present case, MCL 600.2919a, imposes no duty on the defendant to make an inquiry. Therefore, Carter was not statutorily bound to make an inquiry into Wood's authority, and Echelon's analogy to *Thomas* is misplaced.

## CONCLUSION

Constructive knowledge is not sufficient to impose liability under MCL 600.2919a. The term "knew" in the statute means knowledge that the property is stolen, embezzled, or converted.

In lieu of granting leave to appeal, we reverse the Court of Appeals holding that constructive knowledge is sufficient to impose liability under MCL 600.2919a. However, the trial court did not determine whether there was a material issue of fact concerning whether there was sufficient circumstantial evidence to establish that Carter knew that Wood's transactions were fraudulent. Accordingly, we remand this case to the trial court for a hearing on this issue. Defendant's application for leave to appeal on the remaining issues is denied, because we are not persuaded that the questions presented should be reviewed by this Court.

> Elizabeth A. Weaver
> Clifford W. Taylor
> Maura D. Corrigan
> Robert P. Young, Jr.
> Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

ECHELON HOMES, LLC,

    Plaintiff/Counter-Defendant/Appellee,

v                              Nos. 125994, 125995

CARTER LUMBER COMPANY,

    Defendant/Counter-Plaintiff/Appellant.

_____

CAVANAGH, J. (*dissenting*).

    I agree with the majority that circumstantial evidence can be sufficient to establish the knowledge requirement of MCL 600.2919a. However, I disagree with the majority's contention that, as it relates to MCL 600.2919a, constructive knowledge is a distinct concept from knowledge.[1] The word "knew" as used in MCL 600.2919a

---

[1] MCL 600.2919a states the following:

>     A person damaged as a result of another person's buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property when the person buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney's fees. This remedy shall be in addition to any other right or remedy the person may have at law or otherwise.

encompasses actual *and* constructive knowledge; therefore, I must respectfully dissent.

The Legislature knows how to use the term "actual knowledge" and has used this term on numerous occasions. The number of statutes in which the Legislature plainly expresses that actual knowledge is required belies the majority's position that the term "knew" means only actual knowledge.

For example, in the following statutes the Legislature had no difficulty expressing the requirement of actual knowledge. MCL 15.305(1) ("with actual knowledge of such prohibited conflict"); MCL 15.325(1) ("with actual knowledge of the prohibited activity"); MCL 28.425a(2)(c) ("The prosecuting attorney shall disclose to the concealed weapon licensing board any information of which he or she has actual knowledge that bears directly on an applicant's suitability to carry a concealed pistol safely."); MCL 35.501 ("without actual knowledge"); MCL 205.29(2) ("had actual knowledge"); MCL 286.192(1) ("unless the person has actual knowledge"); MCL 324.5531(7) ("in proving a defendant's possession of actual knowledge, circumstantial evidence may be used"); MCL 324.11151(5)(b) ("in proving the defendant's possession of actual knowledge, circumstantial evidence may be used"); MCL 333.2843b(1) ("a

2

physician . . . has actual knowledge"); MCL 333.5475a(1)(b) ("the property manager, housing commission, or owner of the rental unit had actual knowledge of the lead paint hazard"); MCL 333.13738(5)(b) ("in proving the defendant's possession of actual knowledge, circumstantial evidence may be used"); MCL 333.17015(14) ("the physician who relied upon the certification had actual knowledge"); MCL 390.1553(3)(a) ("does not have actual knowledge"); MCL 418.131(1) ("if the employer had actual knowledge that an injury was certain to occur"); MCL 432.207c(7) ("report all information . . . of which it has actual knowledge"); MCL 440.1201(25) ("[a] person has 'notice' of a fact when he or she has actual knowledge of it"); MCL 441.107(a) ("unless it is shown that he acted with actual knowledge"); MCL 445.813(1) ("unless done with actual knowledge"); MCL 449.1303(a) ("with actual knowledge of the limited partner's participation in control"); MCL 450.1472(2) ("with actual knowledge of the restriction"); MCL 450.4406(b) ("has actual knowledge"); MCL 487.717(1) ("shall not be chargeable with changes in rights of withdrawal due to death or incompetency in absence of actual knowledge"); MCL 490.385(1) ("has actual knowledge of a dispute"); MCL 491.422(2) ("with actual knowledge of the restriction"); MCL 491.604 ("unless it has actual

**3**

knowledge that the facts set forth in the affidavit are untrue"); MCL 500.1371(2) ("with actual knowledge"); MCL 500.8127(2)(c) ("A person having actual knowledge of the pending rehabilitation or liquidation shall be considered not to act in good faith."); MCL 554.636(3)(b) ("which the lessor actually knew was in violation"); MCL 554.636(3)(c) ("the lessor actually knew that the provision was not included"); MCL 557.206(d) ("without actual knowledge of such breach"); MCL 600.1403(1) ("the seller had no actual knowledge of the actual age"); MCL 600.2945(j) ("does not have actual knowledge"); MCL 600.2949a ("the defendant had actual knowledge that the product was defective"); MCL 600.2974(3)(d) ("with the actual knowledge that the conduct was injurious to consumers"); MCL 700.2910(1)(c) ("after actual knowledge that a property right has been conferred"); MCL 700.3714(2) ("with actual knowledge of the limit"); MCL 700.5318 ("has actual knowledge that the guardian is exceeding the guardian's powers or improperly exercising them"); MCL 700.5504(1) ("without actual knowledge of the principal's death"); MCL 700.5505(1) ("the attorney in fact did not have actual knowledge of the principal's death"); MCL 700.5510(2) ("did not have actual knowledge"); MCL 700.7404 ("without actual knowledge"); MCL 750.159k(4)(a) ("did not have prior actual knowledge"); MCL

4

750.159m(4) ("did not have prior actual knowledge"); MCL 750.159q(1)(b) ("had prior actual knowledge of the commission of an offense"); MCL 750.159r(1)(a) ("who did not have prior actual knowledge"); MCL 750.219e(3)(a) ("without prior actual knowledge"); MCL 750.219f(4)(a) ("without prior actual knowledge"); MCL 750.411j(b) ("with the approval or prior actual knowledge"); MCL 750.411k(1) ("with prior actual knowledge"); MCL 750.540d(a) ("had prior actual knowledge of and consented to the violation").

I list these statutes not to overwhelm the reader, but to show the fallacy of the majority's position. The Legislature is fully aware of how to ensure a statutory requirement of actual knowledge. In MCL 600.2919a, it has not done so. This Court does not have the authority to impose an actual knowledge requirement when the Legislature has not seen fit to do so. See *In re MCI Telecom Complaint*, 460 Mich 396, 413; 596 NW2d 164 (1999).

The Legislature's ability to clearly state an actual knowledge requirement is indisputable given the number of statutes in which it expresses this requirement. Therefore, the Legislature's use of the term "knew" in MCL 600.2919a must be viewed as allowing a broad range of knowledge to meet the statutory knowledge requirement.

**5**

This Court recognized the difference in specificity between using the terms "actual knowledge" and "knowledge" in *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 173; 551 NW2d 132 (1996). As this Court stated in *Travis*, *supra* at 173, "Because the Legislature was careful to use the term 'actual knowledge,' and not the less specific word 'knowledge,' we determine that the Legislature meant that constructive, implied, or imputed knowledge is not enough." Logically, the opposite is also true. The Legislature's careful selection of the term "knew," instead of "actually knew," indicates that a broad range of knowledge is sufficient to meet the statutory requirement. Because the Legislature's choice of the word "knew" encompasses constructive knowledge, defendant had a duty to make obvious inquiries that an honest person using ordinary caution would have made, instead of avoiding these inquiries. See *Deputy Comm'r of Agriculture v O & A Electric Co-op, Inc*, 332 Mich 713, 716-717; 52 NW2d 565 (1952).

Because this Court must follow the plain text of a statute and because the Legislature used the term "knew," which encompasses actual *and* constructive knowledge, I disagree with the majority's contention that constructive

**6**

knowledge is insufficient to satisfy the requirement of MCL

600.2919a.  Accordingly, I respectfully dissent.

Michael F. Cavanagh
Marilyn Kelly

7