PEOPLE v EDENSTROM

Docket No. 277291. Submitted June 4, 2008, at Detroit. Decided August 5, 2008, at 9:00 a.m. Leave to appeal sought.

Elizabeth A. Edenstrom was charged in the 27th District Court with violating MCL 333.21771(2), which requires nursing-home administrators to report incidents of abuse, mistreatment, or harmful neglect to state authorities, on the basis of an incident in which a nursing-home resident who was connected to an oxygen tank suffered burns when a certified nursing assistant turned off his oxygen and then lit his cigarette, causing residual oxygen in the delivery tubes to ignite. The district court, Randy L. Kalmbach, J., denied the defendant's motion to dismiss the charge on the grounds that this accident was not within the contemplation of the reporting provision and that the provision does not impose a criminal penalty for its violation. On appeal, the Wayne Circuit Court, Diane M. Hathaway, J., dismissed the charge, ruling that the reporting provision applies only to incidents of willful abuse, mistreatment, or neglect, not to accidents. The prosecution appealed by delayed leave granted.

The Court of Appeals held:

1. The phrase "harmfully neglect," as used in MCL 333.21771(1), has acquired a particular and appropriate meaning in the law; therefore, its meaning is properly defined by the agency responsible for the administration of nursing homes rather than by a dictionary. That agency has defined "neglect," including "harmful neglect," to mean a failure to provide goods and services necessary to avoid physical harm, mental anguish, or mental illness. Neglect need not be willful; rather, an act or omission may constitute neglect if it disregards or violates a specific order, care plan, duty, or right of a resident.

2. The nursing assistant's action of lighting the resident's cigarette did not constitute harmful neglect because she performed the duties that she was assigned to perform in the manner in which she had been trained to perform them. The fact that the nursing home had a poor or improper smoking policy in place at the time of the incident is not relevant to the inquiry.

3. The defendant's failure to report the incident was outside the scope of MCL 333.21771(2) because the nursing assistant's

actions with regard to lighting the resident's cigarette did not constitute harmful neglect within the meaning of the statute. However, the circuit court's interpretation of MCL 333.21771 as requiring an element of willful conduct is rejected, as is the circuit court's holding that this provision does not apply to accidents. Although nursing-home administrators may exercise their judgment regarding whether an incident must be reported, they must report incidents that there is reason to believe were caused by abuse, neglect, or misappropriation.

Affirmed.

ZAHRA, P.J., concurring in part and dissenting in part, agreed that an act of neglect need not be willful in order to require reporting under MCL 333.21771 and that the defendant was not absolved from culpability because she concluded that the incident in question was an accident, but disagreed that the resident's injuries could not constitute harmful neglect merely because a deficient policy had been followed, and also disagreed that the defendant's internal investigation absolved her from the duty to report the incident. He would further hold that a violation of MCL 333.21771 is punishable under MCL 333.1299, and would reverse the circuit court's dismissal order, reinstate the district court's order denying dismissal, and remand for further proceedings.

1. HEALTH — NURSING HOMES — PUBLIC HEALTH CODE — REPORTING REQUIRE-
   MENTS — WORDS AND PHRASES — HARMFULLY NEGLECT.

   The phrase "harmfully neglect," in the statutory provision that requires nursing-home administrators to report incidents of abuse, mistreatment, or harmful neglect to state authorities, means to fail to provide goods and services necessary to avoid physical harm, mental anguish, or mental illness, either willfully or unintentionally (MCL 333.21771[1]).

2. HEALTH — NURSING HOMES — PUBLIC HEALTH CODE — REPORTING REQUIRE-
   MENTS.

   Nursing-home administrators must report incidents that there is reason to believe were caused by abuse, harmful neglect, or misappropriation (MCL 333.21771[2]).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Scott L. Teter* and *Thomas S. Marks*, Assistant Attorneys General, for the people.

*Kerr, Russell and Weber, PLC* (by *Robert E. Forrest*), for the defendant.

Before: ZAHRA, P.J., and CAVANAGH and JANSEN, JJ.

CAVANAGH, J. The prosecution appeals by delayed leave granted an order dismissing its complaint charging defendant with violating MCL 333.21771(2), which requires a nursing-home administrator to report certain incidents to state authorities. We affirm.

On December 18, 2004, William Devine, an oxygen-dependent resident of Rivergate Health Care Center, suffered burns while attempting to smoke a cigarette. Devine was in a designated smoking area of the nursing home and was wearing a device called a "nasal cannula," which delivered oxygen to his nose through tubing that was connected to an oxygen tank. The certified nursing assistant who was helping him turned off the oxygen supply and proceeded to light Devine's cigarette. Residual oxygen in the tubing ignited, causing Devine to suffer burns on his hands and face, as well as smoke inhalation. The nursing assistant later indicated that she did not know that nasal cannula tubing could contain oxygen after the oxygen tank was turned off.

Pursuant to MCL 333.21771, a nursing-home administrator is required to report to state authorities any physical, mental, or emotional abuse, mistreatment, or harmful neglect of a patient. Here, Rivergate's administrator—defendant—conducted an investigation into the incident and concluded that the incident was an "accident" and, thus, reporting was not required under the statute. A member of Devine's family, however, reported the incident to state authorities and an investigation followed.

Defendant was subsequently charged with the misdemeanor offense of failing to report the incident to state authorities as required by MCL 333.21771(2). Defendant moved to dismiss the charge, arguing that

(1) this "accident" was not within the contemplation of the statute's reporting requirements, and (2) the statute does not impose a criminal penalty. The prosecution countered that (1) the circumstances showed, at least, recklessness that warranted reporting, and (2) the statutory "catch-all" provision provided that violations of the Public Health Code for which a penalty is not otherwise provided are punishable as misdemeanors. The district court agreed with the prosecution and denied defendant's motion to dismiss.

Defendant appealed to the circuit court. The same arguments were presented. The court agreed with defendant, holding:

> This Court has reviewed the issues presented de novo. And section 21771(1) states that, "A licensee, nursing home administrator or employee of a nursing home shall not physically, mentally or emotionally abuse, mistreat or harmfully neglect a patient."

> This Court is adopting appellant's argument. This Court believes that the reporting statute applies only to one's awareness of willful abuse, mistreatment or neglect, not to accidents.

> This Court cannot expand the definition of the conduct, which constitutes a crime, because criminal statutes must be strictly construed under Michigan laws.

> Since this Court believes that the accident that occurred here was not meant to be considered harmful neglect or abuse and neglect [sic] reporting purposes, this Court feels that reporting was not required under the circumstances. Therefore, this Court is reversing the order entered by the Twenty-seventh District Court denying [defendant's] motion to dismiss the complaint. This Court rules in favor of the appellant.

A delayed application for leave to appeal followed, and was granted. See *People v Edenstrom*, unpublished order of the Court of Appeals, entered August 16, 2007 (Docket No. 277291).

The prosecution argues on appeal that the circuit court misconstrued MCL 333.21771, reading into it a "willful" element that is not required by the statute. We review de novo this issue of statutory interpretation. *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1, 9; 654 NW2d 610 (2002).

MCL 333.21771 provides:

> (1) A licensee, nursing home administrator, or employee of a nursing home shall not physically, mentally, or emotionally abuse, mistreat, or harmfully neglect a patient.

> (2) A nursing home employee who becomes aware of an act prohibited by this section immediately shall report the matter to the nursing home administrator or nursing director. A nursing home administrator or nursing director who becomes aware of an act prohibited by this section immediately shall report the matter by telephone to the department of public health, which in turn shall notify the department of social services.

The issue here is whether defendant, as a nursing-home administrator, was required to report the incident involving Devine. MCL 333.21771(2) requires the nursing-home administrator to report "an act prohibited by this section immediately . . . ." The acts prohibited by the section are physical, mental, or emotional abuse, mistreatment, and harmful neglect of a nursing home patient. MCL 333.21771(1). The prosecution contends that the nursing assistant's conduct with regard to Devine constituted harmful neglect within the contemplation of the statute; thus, the nursing-home administrator—defendant—was required to immediately report the matter.

Whether a defendant's alleged conduct falls within the scope of a statute presents a question of law that is reviewed de novo. See *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991); *People v Rutledge*, 250 Mich

App 1, 4; 645 NW2d 333 (2002). In reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. *Echelon Homes, LLC v Carter Lumber Co*, 472 Mich 192, 196; 694 NW2d 544 (2005). We first turn to the plain language of the statute; if the language is unambiguous, no judicial construction is required or permitted and the statute must be enforced as written. *Id.*, quoting *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999). And, pursuant to MCL 8.3a,

> [a]ll words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.

The phrase "harmfully neglect" is not defined by MCL 333.21771. The prosecution urges us to adopt dictionary definitions of the words. If the legislative intent cannot be determined from the statute itself, a court may consult dictionary definitions for guidance in determining the plain and ordinary meaning of words, i.e., "the common and approved usage of the language." MCL 8.3a; see, also, *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Were we to agree with the prosecution, we would turn to the dictionary definition of "neglect" and find that its definitions include: "1. to pay no attention or too little attention to; disregard or slight. 2. to be remiss in the care of . . . . 3. to omit, as through indifference or carelessness . . . . 4. to fail to carry out or perform . . . ." *Random House Webster's College Dictionary* (2000).

But our inclination is to agree with defendant that the phrase "harmfully neglect," as it is used in MCL 333.21771(1), has acquired a peculiar and appropriate

meaning in the law. That meaning has been prescribed primarily by the Department of Community Health,[1] the entity generally responsible for the administration of nursing homes. MCL 333.21741(1) provides: "The department of public health, after seeking advice and consultation from the department of social services, appropriate consumer and professional organizations, and concerned agencies, shall promulgate rules to implement and administer this part."

The "part" referred to in MCL 333.21741(1) is part 217, which pertains to nursing homes. MCL 333.21771 is obviously a section within part 217. In an apparent effort to accomplish the delegated task, the Bureau of Health Systems (bureau) compiled a complaint investigation manual for long-term-care complaints and facility-reported incidents called the "Complaint and Facility Reported Incident Manual." Recognizing that pertinent terms—like abuse, mistreat, and neglect—are used but not defined by the applicable statutes, § 3300 of the manual "sets forth definitions that meet the intent of these multiple legal bases."

Section 3320 of the manual states as follows:

> *Neglect* means failure to provide goods and services necessary to avoid physical harm, mental anguish, or mental illness. The source of this definition is 42 CFR 488.301. The Public Health Code does not define the term *harmfully neglect* used in 21771(1). By definition, neglect is harmful, so the federal definition is adopted for both state and federal purposes.
>
> Please note that by definition a particular event is either abuse or neglect, not both.
>
> Basically, neglect involves the failure of a staff person to carry out his/her duties in regard to a resident. In theory, any failure to provide required services of any kind for any

---

[1] Formerly known as the Department of Public Health.

reason could be considered neglect. However, citations for neglect are normally issued only in cases where there is significant actual harm resulting from a failure to act in the presence of the knowledge of what should be done and the capability to provide the required services. Such cases may include a failure to follow a standard of practice. Even if neglect is not cited, citations are issued against the facility for the specific care issues involved.

It is well settled that agencies are allowed "to interpret the statutes they are bound to administer and enforce." *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 240; 501 NW2d 88 (1993). And this proffered definition and explanation is not only consistent with the dictionary definition; it is also consistent with the definition of "neglect" under the Social Welfare Act, MCL 400.11 *et seq.*, which states, in part, that "[n]eglect includes the failure to provide adequate food, clothing, shelter, or medical care." MCL 400.11(d).

Defendant, as the nursing home's administrator, was required to follow the rules promulgated by the bureau as set forth in its manual. Thus, she was to immediately report any instance of harmful neglect. Defendant's investigation into the Devine incident revealed that the nursing assistant lit Devine's cigarette not knowing that oxygen could remain in the nasal cannula tubing after the oxygen tank had been turned off. Defendant concluded that the incident was an accident. According to defendant's interpretation of the reporting provision of the manual, this incident was not reportable because it was not the result of a willful failure to provide treatment. Defendant understood that "harmful neglect" meant knowing or intentional neglect as it relates to medical treatment, not accidents. Thus, defendant did not report this incident under MCL 333.21771(2).

First, we consider defendant's conclusion that the nursing assistant's conduct did not constitute harmful

neglect. All the record evidence indicates that the nursing assistant turned off the oxygen tank and then lit Devine's cigarette. She did not remove Devine's nasal cannula before doing so because she did not know that oxygen could remain in the nasal cannula tubing after the oxygen tank had been turned off. The evidence also reveals that the nursing assistant followed the smoking policy that was in place at the time, which did not include the removal of nasal cannula before lighting a resident's cigarette. And there is no evidence that the facility instructed the nursing assistant regarding patients who wished to smoke while receiving oxygen therapy or wearing a nasal cannula. In other words, the nursing assistant did not fail to carry out her duties in regard to Devine; she did what she knew to do. She did not fail "to act in the presence of the knowledge of what should be done and the capability to provide the required service." The evidence clearly showed that the nursing assistant did not harmfully neglect Devine as that phrase is used in the statutory provision.

This conclusion is buttressed by the provisions in the manual that explain what is meant by "neglect." Section 3320 of the manual states:

• A resident has been neglected whenever all of the following conditions are satisfied:

▸ The facility fails to provide or arrange for medical, dental, nursing, dietary, physical therapy, pharmacy, habilitation, psychological, speech, audiological or other treatments or services to the resident in question; and

▸ The facility's failure to provide these treatments or services is either intentional or the result of carelessness; and

▸ The failure to provide these treatments or services, results in a deterioration of the resident's physical, mental or emotional condition.

• Examples of Neglect:

The following actions or omissions constitute neglect whenever they result in a noticeable deterioration of the resident's physical, mental or emotional condition:

▶ Failure to carry out a physician's order . . . .

▶ Failure to carry out nursing, treatment or individual resident care plans.

▶ Failure to notify a resident's attending physician and other responsible persons in the event of an incident involving that resident.

▶ Failure to notify a resident's attending physician and other responsible persons in the event of a significant change in that resident's physical, mental or emotional condition.

▶ Failure to provide an adequate number of nutritionally balanced, properly prepared and medically appropriate meals.

▶ Failure to adequately supervise the whereabouts and/or activities of a resident.

▶ Failure to take precautionary measures that have been ordered . . . .

▶ Refusal or failure to provide any service to the resident for the purpose of punishing, disciplining or retaliation.

▶ Allowing the physical environment to deteriorate . . . .

▶ Leaving a resident lying in feces or urine soaked linens for an extended period of time.

▶ Leaving a resident restrained in other than an immediate emergency, without a physician's order, solely for an employee's own convenience.

The examples of neglect cited in the manual persuade us that the neglect need not be willful, as defendant argues and the circuit court appeared to conclude. To the contrary, the neglect can be unintentional. The act or omission may be, for example, in disregard or in violation of specific orders or care plans, a duty, or a

resident's rights. The situations cited in the manual are not exhaustive; they are merely "examples." The focus of the inquiry is on the act or omission, as well as the surrounding circumstances—a point made more clear with an example.

A resident lies in urine-soaked bed linens for seven hours and a severe pressure ulcer develops. The nursing assistant merely got busy and lost track of time. She knew that leaving a resident in that condition was unacceptable and she did not intend to do it. It just happened. It was an accident. The nursing assistant's conduct constituted harmful neglect, reportable under MCL 333.21771(2). In contrast, in this case the nursing assistant's action did not constitute harmful neglect— she performed the duties she was assigned to perform, in the manner that she was trained to perform them. Contrary to the dissenting opinion, that the nursing home had a poor or improper smoking policy in place at the time of this incident does not change our opinion with respect to the nursing assistant's own actions. We believe that "the negligence of the Rivergate Care Center," as it is referred to by the dissent, is a different issue than the one before us, i.e., what constitutes "harmful neglect" by a nursing-home employee. Thus, we agree with defendant's conclusion on this issue, although we reject defendant's reasoning.

Second, we turn to defendant's decision not to report this incident. This action against defendant resulted from her failure to report this incident to state authorities as mandated by MCL 333.21771(2). Section 3410 of the manual sets forth the bureau's interpretation of that statute as follows:

> Section 21771 requires *immediate* reporting when the facility becomes *aware of a prohibited act*. The federal requirement requires reporting *alleged* violations. In both

cases the facility must first screen incidents, observations, and other problematic or unusual events reported by employees to determine if they potentially involve any alleged acts, which could meet the definition of abuse if they were substantiated. The facility must investigate the alleged act or incident. The facility must make a preliminary judgment regarding the likely credibility of a reported incident, i.e., abuse, neglect, or misappropriation and immediately report abuse, neglect, or misappropriation. Only reports that meet these tests need to be reported.

Section 5241 of the manual sets forth the bureau's rules related to the investigation of incidents as follows:

Each long term care facility must review any and all situations or incidents in which a resident may have suffered physical or other harm for reasons which are unknown, unclear or not adequately explained. If, during the course of that review, the facility finds reason to believe that abuse, neglect, or misappropriation was or is suspected to have been the cause of that harm, the incident must be reported to the Bureau.

A nursing home administrator or nursing director is first expected to immediately conduct a thorough in-house investigation to determine what happened and do the following:

• If it is determined by a conclusive investigation that the incident did not occur or was not abuse, neglect, or misappropriation, a detailed incident report and the investigation findings must be filed in the facility. It is not necessary to notify the Bureau in those cases.

• If it is determined that the abusive practices did occur or are still suspected then the nursing home is required to notify the Bureau as described below.

Section 5243 of the manual states:

Incidents do not need to be reported to the Bureau if it is determined by a conclusive facility investigation that the incident did not occur or was not abuse, neglect, or misappropriation. A detailed incident report and the investiga-

tion findings must be filed in the facility for potential review by Bureau surveyors at surveys or other visits.

Again, Section 5272 of the manual provides:

> The Bureau cites facilities that fail to report immediately (as defined above) even if they voluntarily report later.
>
> **EXCEPTION**: As noted above, facilities which conduct a thorough in-house investigation and determine that the incident was not abuse, neglect, or misappropriation are required to maintain a detailed report or accident report on file in the facility and it is not necessary to notify the Bureau. If investigation determines that the incident was in fact abuse, neglect, or misappropriation, the facility is not cited by the Bureau for failure to report if it is determined that the facility conducted a thorough investigation and made a good faith, informed judgment that the incident was not abuse, neglect, or misappropriation.

Here, defendant contends that she did not report this incident to the bureau because her conclusive investigation resulted in a good-faith determination that the incident was *not* abuse, neglect, or misappropriation—it was an accident. As discussed earlier, we agree with defendant that the incident did not constitute harmful neglect for which reporting was required under MCL 333.21771(2). We also agree with defendant that the manual clearly requires that the nursing-home administrator exercise judgment in determining whether an incident must be reported—not all incidents that result in harm or injury to a resident are required to be reported immediately to the bureau. The manual repeatedly makes that clear. Thus, we disagree with our dissenting colleague's position that the nursing-home administrator must immediately report, without the benefit of any investigation, any and all incidents that occur in a nursing home.

However, we reject defendant's suggestion, as well as the circuit court's apparent conclusion, that those incidents that can be characterized as "accidents" need not be reported. The term "accident" is too subjective and nebulous. So-called "accidents" that may be the result of harmful neglect as set forth in the manual are to be reported immediately. We also reject defendant's claim that only if she "became aware of outright physical, mental or emotional abuse, mistreatment or harmful neglect is the statute's reporting requirement triggered." The term "outright" implies an element of absolute knowledge of prohibited behavior that is not consistent with the manual's reporting requirement. To the contrary, § 5241 of the manual states that if there is "reason to believe that abuse, neglect, or misappropriation was or is suspected to have been the cause of that harm, the incident must be reported to the Bureau." Accordingly, the bureau has interpreted the reporting requirement of MCL 333.21771(2) broadly, which is consistent with sound public policy—overreporting is more desirable than underreporting.

In summary, in light of the facts and circumstances, defendant's conduct—her failure to report the incident —did not fall within the scope of MCL 333.21771(2). See *Thomas*, *supra*. It is clear that the nursing assistant's act or omission with regard to the lighting of Devine's cigarette did not constitute harmful neglect within the contemplation of the statute. Thus, we affirm the circuit court's dismissal of this action. To the extent the circuit court interpreted MCL 333.21771 to contain a "willful" element, that interpretation is rejected, as is the circuit court's holding that this reporting statute does not apply to "accidents." In light of our resolution of this issue, we need not consider whether a violation of MCL 333.21771(2) is punishable under MCL 333.1299.

Affirmed.

JANSEN, J., concurred.

ZAHRA, P.J. *(concurring in part and dissenting in part)*. I concur in the majority's conclusion that an act of neglect need not be willful in order to be reportable under MCL 333.21771. I also concur in the majority's conclusion that defendant is not absolved from culpability under MCL 333.21771 merely because she concluded that the incident here at issue was an "accident." However, I dissent from the majority's conclusion that the injury sustained by William Devine was not the result of "harmful neglect" merely because the employee providing care to the injured patient "performed the duties she was assigned to perform, in the manner that she was trained to perform them." In my opinion, the fact that an employee followed a deficient and hazardous policy to assist oxygen-dependent patients to smoke does not abate the negligence of the Rivergate Health Care Center, which created this policy, nor does it relieve defendant of her duty to report this incident under MCL 333.21771.

I also dissent from the majority's conclusion that defendant is absolved from the duty to report under MCL 333.21771 because her decision not to report the incident was based on her postincident investigation. The statute makes it very clear that an administrator must immediately report instances of harmful neglect to the Department of Community Health, previously the Department of Public Health. An administrator who chooses not to report on the basis of his or her postincident investigation runs the risk that a decision not to report will be reviewed by law-enforcement authorities. This statute is written to encourage over-reporting of possible violations of the Public Health

Code. Requiring nursing-home administrators to report incidents that may rise to the level of abuse, mistreatments, or neglect as soon as they become aware of the incidents is more in line with the statute's language and intention than, as the majority seems to do here, unilaterally allowing an administrator to decide whether an incident is reportable, after conducting an internal investigation. See, generally, *People v Gubachy*, 272 Mich App 706, 710; 728 NW2d 891 (2006) (the court must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose).

Finally, although not addressed in the majority opinion, I conclude that defendant's argument that the statute does not provide a penalty for a violation of MCL 333.21771(2) is without merit. I conclude that the plain language of MCL 333.1299 provides that violations of the Public Health Code are punishable as misdemeanors. The statute does not specifically criminalize a failure to report, although a different statute criminalizes violations of two of the other subsections of the statute. See MCL 333.21771(2); MCL 333.21799c(1)(e) (providing that violations of MCL 333.21771[1] and MCL 333.21771[6] constitute misdemeanors punishable by up to one year in prison, a fine of between $1,000 and $10,000, or both). Nonetheless, the catchall provision of the Public Health Code applies here. The catchall provision states:

> (1) A person who violates a provision of this code for which a penalty is not otherwise provided is guilty of a misdemeanor.
>
> (2) A prosecuting attorney having jurisdiction and the attorney general knowing of a violation of this code, a rule promulgated under this code, or a local health department

regulation the violation of which is punishable by a criminal penalty may prosecute the violator. [MCL 333.1299.]

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The Legislature is presumed to have intended the meaning it plainly expressed. *People v Petty*, 469 Mich 108, 114; 665 NW2d 443 (2003). Clear statutory language must be enforced as written. *People v Gillis*, 474 Mich 105, 115; 712 NW2d 419 (2006). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *People v Weeder*, 469 Mich 493, 497; 674 NW2d 372 (2004).

The plain and ordinary meaning of the language of MCL 333.1299 is clear, and judicial construction is not necessary. See *Weeder, supra.* MCL 333.1299(1) clearly states that a person who violates a section of the Public Health Code for which a penalty has not been provided is guilty of a misdemeanor. This language is not ambiguous, and this statute should be enforced as written.

I would reverse the order of dismissal granted by the circuit court, reinstate the order denying dismissal issued by the district court, and remand for further proceedings.