DAVIS v LaFONTAINE MOTORS, INC

Docket No. 258434. Submitted March 16, 2006, at Detroit. Decided May
4, 2006, at 9:00 a.m.

Robert Davis and Mariah Cook-Davis brought an action in the
Wayne Circuit Court against LaFontaine Motors, Inc.; and Fifth
Third Financial Corporation. The plaintiffs, who purchased a
Daewoo automobile from LaFontaine under an installment loan
agreement that was eventually assigned to Fifth Third, could not
obtain from LaFontaine repair of the automobile under the war-
ranty provided by Daewoo after Daewoo filed for bankruptcy. In
their action, the plaintiffs alleged, among other things, breach of
express and implied warranties; revocation; breach of the duty of
good faith under the Uniform Commercial Code, MCL 440.1101 *et
seq.*; violation of the Magnuson-Moss Warranty Act (MMWA), 15
USC 2301 *et seq.*; and violation of the Michigan Consumers
Protection Act (MCPA), MCL 445.901 *et seq.* The court, Warfield
Moore, Jr., J., denied the defendants' motion for summary dispo-
sition, agreeing with the plaintiffs that defendants could not
validly disclaim implied warranties under the MMWA, that the
disclaimer was ineffective because it was not conspicuous, that the
disclaimer was ineffective because it was not part of the sales
contract, that defendants could not disclaim express warranties,
that there was an issue of fact regarding whether LaFontaine
made express warranties, and that the disclaimer was no defense
to the plaintiffs' revocation claim. The defendants appealed by
leave granted.

The Court of Appeals *held*:

The circuit court erred in denying the defendants' motion for
summary disposition.

1. Nowhere in the vehicle purchase order did LaFontaine make
any express warranty. The purchase order recognized the manu-
facturer's warranty and clearly disclaimed any such warranty.
LaFontaine made no express warranty of its own.

2. Implied warranties of merchantability and fitness for a
particular purpose may be disclaimed in a contract for the sale of
goods. MCL 440.2314(1) and 440.2315. The disclaimer of such
implied warranties in this case was conspicuous, as required by
MCL 440.2316(2). LaFontaine did not make a written express

warranty of its own and thus was not prohibited from disclaiming implied warranties of merchantability under 15 USC 2308 of the MMWA.

3. MCL 492.112(a) requires that an installment sale contract be in writing, signed by both parties, and contain all the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold. The dispute in this case does not relate directly to any provision of the retail installment sale agreement. The fact that the warranty disclaimer was not a part of that agreement does not preclude its enforcement.

4. MCL 440.2302(1) allows a court to find a contract unenforceable if it was unconscionable at the time it was made. In this case, the plaintiffs' complaints focus only on events that occurred long after the sale, that is, when Daewoo went bankrupt. The contract was not unconscionable when it was made.

5. MCL 440.2608 allows revocation of acceptance of a lot or commercial unit where the nonconformity impairs the value to the buyer. That statute does not apply to breaches of warranties or to the failure of the seller to perform contractual obligations. Even if LaFontaine had failed to perform a contractual duty to make repairs, the statute does not provide authority for the plaintiffs to revoke the contract. Because LaFontaine's disclaimer stated that the plaintiffs purchased the vehicle "as is," the vehicle, even with alleged defects, conforms to the contract and to the parties' legitimate contractual expectations. The plaintiffs accepted the vehicle for which they bargained; there was no nonconformity.

6. The plaintiffs claimed several violations of the MCPA. There was no violation of MCL 445.903(1)(n) because the disclaimer did not conflict with the warranty book, which indicated that the dealer was to perform warranty service. LaFontaine did perform warranty service until its relationship with Daewoo was terminated. There was no violation of MCL 445.903(1)(r) because no evidence showed that LaFontaine had represented that the plaintiffs would receive any goods or services for free or without charge. There was no violation of MCL 445.903(1)(t) because the plaintiffs signed an agreement that conspicuously disclaimed any warranties. There was no violation of MCL 445.903(1)(y). LaFontaine never promised to provide warranty service. Rather, it was Daewoo that represented that any authorized Daewoo dealer or Daewoo-authorized service operation would provide warranty service, and it was Daewoo that failed to provide a promised benefit.

1. SALES — UNIFORM COMMERCIAL CODE — IMPLIED WARRANTIES — DISCLAIMERS.

   The implied warranties of merchantability and of fitness for a
   particular purpose associated with a sale of goods may be dis-
   claimed in a written contract of sale; such disclaimer must be
   conspicuous (MCL 440.2314[1], 440.2315, 440.2316[2]).

2. SALES — UNIFORM COMMERCIAL CODE — ACCEPTANCE — REVOCATION.

   A buyer may revoke acceptance of a lot or commercial unit whose
   nonconformity impairs the value to the buyer; such a revocation does
   not apply to warranties accompanying the product purchased or to
   the seller's failure to perform contractual obligations (MCL
   440.2608).

*Liblang & Associates, P.C.* (by *Dani K. Liblang*), for
Robert Davis and Mariah Cook-Davis.

*Ward Powers, P.C.* (by *Ward Powers*), and *Colombo &
Colombo, P.C.* (by *Eric R. Bowden*), for LaFontaine Mo-
tors, Inc.

Amicus Curiae:

*Dolenga & Dolenga, PLLC* (by *Michael D. Dolenga*
and *Keith A. Wuotinen*), for the Recreational Vehicle
Industry Association and the Michigan Association of
Recreational Vehicles and Campgrounds.

Before: OWENS, P.J., and KELLY and FORT HOOD, JJ.

PER CURIAM. Defendants appeal by leave granted the
trial court's order denying their motion for summary
disposition. We reverse.

I. BASIC FACTS

Plaintiffs purchased a new 2001 Daewoo automobile
from defendant LaFontaine Motors, Inc. At the time
plaintiffs purchased the vehicle, LaFontaine was an
authorized Daewoo dealer, in addition to being a
Daewoo-authorized service operation. The vehicle pur-
chase order, signed by the parties, contained certain

warranty disclaimers and expressly stated that LaFontaine was not an agent of Daewoo, the vehicle manufacturer. Several days after the vehicle purchase order was signed, the parties executed a retail installment motor vehicle purchase agreement, which LaFontaine assigned to Old Kent Bank, which in turn assigned it to defendant Fifth Third Financial Corporation.

After plaintiffs took possession of the vehicle, LaFontaine performed minor repair work under the manufacturer's warranty. In September 2001, LaFontaine ceased being an authorized service operation when Daewoo and LaFontaine voluntarily terminated their sales and service agreement. When plaintiff Mariah Cook-Davis later contacted LaFontaine about potential warranty repairs, she was advised that LaFontaine was no longer authorized to perform Daewoo warranty work and was referred to Tamaroff Daewoo (Tamaroff). Thereafter, plaintiffs received warranty service repair from Tamaroff and had no further contact with LaFontaine. In March 2002, when Cook-Davis again brought the vehicle to Tamaroff for service, she was informed that Daewoo had declared bankruptcy and that, because of the bankruptcy, the dealership was no longer doing warranty work. As a result, she was told that she would have to pay for any service and repairs herself. Cook-Davis contacted other service facilities and was informed by all of them that she would be responsible for any repairs.

Plaintiffs subsequently filed this action, against LaFontaine and Fifth Third Financial Corporation, claiming breach of express and implied warranties; revocation; breach of the duty of good faith under the Uniform Commercial Code, MCL 440.1101 *et seq.*; violation of the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq.*; violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*; and violation of the Motor Vehicle Service and Repair Act, MCL 257.1301 *et seq.*

LaFontaine moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiffs' various claims were precluded by the disclaimer in the vehicle purchase order and, additionally, that the revocation claimed failed because plaintiffs failed to notify LaFontaine of their intent to seek revocation within a reasonable time after discovering the defects. LaFontaine further argued that, because plaintiffs' warranty claims failed, so did their claims under the MMWA. Defendant Fifth Third concurred in the motion. In response, plaintiffs argued that (1) defendants could not validly disclaim implied warranties under the MMWA, 15 USC 2308; (2) the disclaimer was ineffective because it was not conspicuous, as required by MCL 440.1201; (3) the disclaimer was not part of the contract; (4) defendants could not disclaim express warranties, and there was an issue of fact regarding whether LaFontaine made express warranties; and (5) the disclaimer was no defense to plaintiffs' revocation claim.

At the hearing on defendants' motion, the trial court stated:

> I would deny all of the motions except one under Consumer Protection Act. And since its is not well defined in law I'll let you take it to the Court of Appeals so that this issue—if you choose to do that. And find that LaFontaine is responsible under the warranty to the purchaser of the vehicle under these circumstances where it sold the vehicle and subsequently the manufacturer went out of business, Daewoo, and now the purchaser who purchased it through that has no recourse. But I say they have a recourse against LaFontaine Motors.

The trial court entered an order denying defendants' motion for summary disposition in its entirety. Although not specifically articulated, the trial court impliedly adopted each of plaintiffs' arguments.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dressel v Ameribank,* 468 Mich 557, 561; 664 NW2d 151 (2003). Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence submitted by the parties, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Veenstra v Washtenaw Country Club,* 466 Mich 155, 164; 645 NW2d 643 (2002).

This appeal involves statutory interpretation. We review de novo questions of statutory interpretation. *Echelon Homes, LLC v Carter Lumber Co,* 472 Mich 192, 196; 694 NW2d 544 (2005). "In reviewing questions of statutory interpretation, our purpose is to discern and give effect to the Legislature's intent." *Id.* Where the plain language of the statute is unambiguous, there is a presumption that the Legislature intended the meaning clearly expressed. *Id.* In that case, no further judicial construction is required or permitted; the statute must be enforced as written. *Id.*

This appeal also involves the interpretation of the parties' contract. The main goal in interpreting a contract is to honor the parties' intent. *Mahnick v Bell Co,* 256 Mich App 154, 158-159; 662 NW2d 830 (2003). Courts must discern the parties' intent from the words used in the contract and must enforce an unambiguous contract according to its plain terms. *Id.* at 159. "If the contract language is clear and unambiguous, then its meaning is a question of law for the court to decide." *Conagra, Inc v Farmers State Bank,* 237 Mich App 109, 132; 602 NW2d 390 (1999).

### III. WARRANTIES

Defendants argue that the trial court erred in denying defendants' motion for summary disposition on plaintiffs' breach of warranties claim. We agree.

### A. EXPRESS WARRANTIES

In the trial court, plaintiffs contended that because LaFontaine represented that the sale included a manufacturer's warranty, this representation was an express warranty under MCL 440.2313 that cannot be disclaimed. MCL 440.2313 provides:

> (1) Express warranties by the seller are created as follows:

> (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

> (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty, except as provided in the art multiples sales act and Act No. 121 of the Public Acts of 1970, being section 442.321 to 442.325 of the Michigan Compiled Laws.

Here, on the first page of the vehicle purchase order, which both plaintiffs signed, under the heading "IMPORTANT BUYER INFORMATION," the following notice appears:

1. Any warranties from a Manufacturer or supplier, including warranties on any Dealer-installed Non-Manufacturer accessories, are theirs, not Dealer's, and only such Manufacturer or other supplier will be liable for performance under those warranties. All goods, services and Vehicles sold by Dealer are sold "AS IS" unless Dealer furnished Buyer with a separate written warranty or service contract or the used car sticker on the window on the vehicle indicates otherwise. (SEE PARAGRAPH 10 ON REVERSE SIDE). This disclaimer in no way affects the Manufacturer's Vehicle warranty.

Paragraph 10, entitled "WARRANTY DISCLAIMER," is printed in all capital letters and provides:

A. IN THE EVENT THE VEHICLE IS EITHER A NEW VEHICLE OR A USED VEHICLE STILL SUBJECT TO A MANUFACTURER'S WARRANTY, DEALER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS AND IMPLIED (INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE) ON THE VEHICLE. FURTHER, DEALER NEITHER MAKES NOR AUTHORIZES ANY OTHER PERSON TO MAKE ON DEALER'S BEHALF, ANY WARRANTY IN CONJUNCTION WITH THE SALE OF THE VEHICLE. AS TO ANY MANUFACTURER'S WARRANTY EXTENDED TO BUYER BY MANUFACTURER, DEALER SPECIFICALLY DISCLAIMS ANY LIABILITY THEREUNDER, SUCH MANUFACTURER'S WARRANTY BEING BETWEEN BUYER AND MANUFACTURER ONLY.

Paragraph 1 of the purchase order provides, "As used in this Order, the term 'Manufacturer' means the Company that manufactured the Vehicle or chassis. The Dealer is not the agent of Manufacturer."

Nowhere in the vehicle purchase order does LaFontaine make any express warranty. Rather, the vehicle purchase order recognizes the manufacturer's warranty

and then clearly disclaims any such warranty. Because LaFontaine did not make an express warranty of its own, the trial court erred in denying summary disposition on plaintiffs' claim that defendants breached an express warranty.

### B. IMPLIED WARRANTIES

Plaintiffs' breach of implied warranties claim also fails because of the disclaimer. Every contract for the sale of goods carries an implied warranty of merchantability unless such warranty is excluded or modified. MCL 440.2314(1). Such a contract may also carry an implied warranty of fitness for a particular purpose, but this warranty may also be excluded or modified. MCL 440.2315. MCL 440.2316 provides, in part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

> (3) Notwithstanding subsection (2):

> (a) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . . .

Plaintiffs do not contest that the vehicle purchase order is in writing and merchantability is mentioned; rather, they argue that the disclaimer of implied warranties is ineffective because it was not conspicuous under MCL 440.2316(2).

MCL 440.1201(10) provides:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: non-negotiable bill of lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

The official comment on MCL 440.1201(10) explains that the test for conspicuousness is "whether attention can reasonably be expected to be called to it."

We find that the disclaimer is conspicuous. On the first page of the vehicle purchase order, which both plaintiffs signed, there is a heading entitled "IMPORTANT BUYER INFORMATION." In capital letters within that paragraph, it states, "SEE PARAGRAPH 10 ON REVERSE SIDE." Paragraph 10 includes a heading in capital letters stating "WARRANTY DISCLAIMER." In her deposition, Cook-Davis admitted that she read and understood the disclaimer language. Therefore, we conclude that there is no genuine issue of fact with regard to whether the disclaimer of implied warranties was conspicuous.[1] For the same reasons, we also reject plaintiffs' argument that they "did not knowingly waive their rights and remedies." Under these circumstances, the plain terms of the vehicle purchase order operated

---

[1] Plaintiffs contend that the disclaimer was not actually part of the contract because the retail installment motor vehicle purchase agreement, which has no disclaimer, governs the sale. We find this contention to be without merit. The vehicle purchase order clearly and conspicuously states, "The front and back of this Order comprises [sic] the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized." The vehicle purchase agreement clearly governs the sale of the vehicle.

to exclude all implied warranties pursuant to both MCL 440.2316(2) and 440.2316(3)(a).

Plaintiffs also contend that, under 15 USC 2308 of the MMWA, LaFontaine cannot disclaim implied warranties when it made a written express warranty. But LaFontaine did not make a written express warranty. The vehicle purchase order merely recognized that the *manufacturer* provided a warranty. And LaFontaine disclaimed any liability under the manufacturer's warranty. Therefore, LaFontaine was not prohibited from disclaiming the implied warranties of merchantability under § 2308 of the MMWA.

### IV. VALIDITY OF DISCLAIMER

Plaintiffs also contend that the disclaimer is not valid because all terms governing the sale must be contained in a single document pursuant to the Motor Vehicle Sales Finance Act (MVSFA), MCL 492.101 *et seq*. The MVSFA provides that an installment sale contract must be in writing, signed by both parties, and must "contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold . . . ." MCL 492.112(a).

In support of their argument, plaintiffs rely on *Rugumbwa v Betten Motor Sales,* 136 F Supp 2d 729 (WD Mich, 2001), in which the plaintiff alleged that the defendant made false representations regarding the cost of vehicle service contracts. The parties had entered into five separate agreements, including a handwritten sales order, a typewritten sales order, and an installment sales contract. The installment sales contract contained various cost terms not found in the sales orders. The defendant moved to compel arbitration pursuant to an arbitration clause in the two sales orders. *Id.* at 731. The court determined that because

the MVSFA and another relevant act "envision the execution of a single, comprehensive installment contract containing all of the agreements made by the parties with regard to the subject matter of the retail installment sale" and the installment sales contract did not include an arbitration clause, the arbitration clause contained in the sales orders was not enforceable. *Id.* at 733.

However, in *Pack v Damon Corp,* 320 F Supp 2d 545 (ED Mich, 2004), the court declined to invalidate an arbitration clause that was contained in the dealer's sales agreement, but not in the retail installment contract. The court distinguished *Rugumbwa* and another case, *Lozada v Dale Baker Oldsmobile, Inc,* 197 FRD 321 (WD Mich, 2000), stating:

> *Rugumbwa* and *Lozada* stand for the more narrow proposition that claims alleged with regard to the subject matter of a retail installment contract are subject only to those agreements expressly set forth in the installment contract. Unlike the *Rugumbwa* and *Lozada* plaintiffs, plaintiff Pack is not challenging the terms of his retail installment contract, but [the dealer's] warranties and performance under the terms of the . . . sales agreement. [The dealer] does not seek arbitration of claims arising under the . . . retail installment agreement; plaintiff does not allege claims regarding the subject matter of the retail installment contract. The *Rugumbwa* court itself distinguished between claims with regard to a retail installment contract, and claims with regard to a sales contract[.] [*Pack, supra* at 554-555.]

We find this reasoning persuasive and apply it here. As in *Pack,* the dispute in this case does not relate directly to any provision of the retail installment motor vehicle purchase agreement. Therefore, the fact that the warranty disclaimer was not part of the latter agreement does not preclude its enforcement.

V. UNCONSCIONABILITY

Plaintiff next argues that LaFontaine's disclaimer is unconscionable under MCL 440.2302, which provides in pertinent part:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract, or it may enforce the reminder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. [Emphasis added.]

Specifically, plaintiffs argue that the disclaimer is unconscionable because it deprived plaintiffs "of the substantial benefit of their bargain, in that there would be no remedy under the now illusory warranty coverage." Pursuant to the plain language of MCL 440.2302, a court may find that a contract was "unconscionable at the time it was made." Here, plaintiffs' complaints focus only on events that occurred *after* the sale. When plaintiffs entered into the vehicle purchase agreement, there was a remedy under the manufacturer's warranty. The failure of that remedy arose only when Daewoo filed for bankruptcy, long after the contract was made. There is no evidence supporting plaintiffs' assertion that the contract was unconscionable under MCL 440.2302.

VI. REVOCATION

Plaintiffs also argue that revocation of the contract, pursuant to MCL 440.2608, is an available remedy because LaFontaine refused to perform repairs under the manufacturer's warranty irrespective of the disclaimer. We disagree.

MCL 440.2608 provides, in relevant part:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of the discovery before acceptance or by the seller's assurances.

On appeal, plaintiffs argue that "the concept of nonconformity" includes not only breaches of warranties, but "any failure of the seller to perform according to his obligations under the contract." We disagree that the plain meaning of the statute permits this interpretation. MCL 440.2608(1) states that a buyer may revoke his acceptance "of a *lot or commercial unit whose* nonconformity substantially impairs its value to him . . . ." Thus, the statute plainly indicates that the nonconformity relates to the actual lot or unit. The nonconformity does not relate to a party's actions or inactions. Accordingly, even if LaFontaine failed to perform a contractual duty to make repairs, MCL 440.2608 does not provide authority for plaintiffs to revoke the contract.

To the extent that plaintiffs' revocation claim rests on the alleged defects of the vehicle itself, the question posed is whether the vehicle can be said to be nonconforming under plaintiffs' contract with LaFontaine. With respect to Uniform Commercial Code § 2-608, on which MCL 440.2608 is based, it has been noted that

[a] determination of the existence or non-existence of a nonconformity requires reference to the terms of the contract, including the law of warranty. . . . [T]he courts do not look with favor on disclaimers that purport to disclaim responsibility for what the seller has in essence agreed to sell. But if the only relevant language in the agreement as

to quality has been effectively declaimed, no nonconformity in the goods sufficient for revocation can exist. If the goods are sold "as is," comment 7 of 2-316 states the "buyer takes the entire risk as to the quality of the goods." [1 White & Summers, Uniform Commercial Code (4th ed), § 8-4, pp 456-457.]

This Court's decision in *Henderson v Chrysler Corp*, 191 Mich App 337, 341-343; 477 NW2d 505 (1991), implicitly supports this reading of MCL 440.2608. In *Henderson*, this Court barred revocation claims against manufacturers that were not in privity with the seller on the basis that "revocation is inextricably connected to the contractual relationship between a buyer and a seller." *Id.* at 341.

Adopting the reasoning from these sources, we hold that, for the purposes of revocation under MCL 440.2608, nonconformity is a failure of the goods sold to conform to legitimate expectations arising from the contract. In this contract, it was plainly agreed that "All goods, services and Vehicles sold by Dealer are sold 'AS IS' unless Dealer furnished Buyer with a separate written warranty or service contract or the used car sticker on the window on the vehicle indicates otherwise." Because plaintiffs purchased the vehicle "as is," the vehicle, even with the alleged defects, conforms to the contract and therefore necessarily conforms to the parties' legitimate contractual expectations. Plaintiffs got the vehicle for which they bargained; there was no nonconformity.

### VII. MICHIGAN CONSUMER PROTECTION ACT

Finally, we disagree with plaintiffs' argument that a genuine issue of material fact exists regarding liability under MCL 445.903(1)(n), (r), (t), and (y) of the MCPA. Plaintiffs argue that § 3(1)(n) was violated because the

disclaimer conflicts with the warranty book they received, which indicates that the dealer is to perform warranty service. But the disclaimer does not indicate that LaFontaine would not perform service on Daewoo's warranty; it merely indicates that it was not offering its own warranty. Therefore, there is no conflict. Moreover, plaintiffs point to nothing showing that LaFontaine represented that plaintiffs would receive goods or services "free" or "without charge," thereby precluding liability under § 3(1)(r). Further, there was no violation of § 3(1)(t), because plaintiffs signed an agreement that conspicuously disclaimed any warranties. With regard to § 3(1)(y), plaintiffs claim that LaFontaine failed to provide a promised benefit because it would not provide warranty service. But LaFontaine never promised to provide warranty service. Rather, it was Daewoo that represented that "any authorized Daewoo dealer or Daewoo Authorized Service Operation" would provide warranty service. Therefore, it was Daewoo that failed to provide a promised benefit, not LaFontaine. Further, the record shows that LaFontaine did provide warranty service until it was no longer an authorized dealer. Accordingly, there was no violation of § 3(1)(y).

For all the foregoing reasons, we find that the trial court erred in denying defendants' motion for summary disposition. Accordingly we reverse and remand for entry of an order of summary disposition in favor of defendants. We do not retain jurisdiction.