NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0001n.06

No. 10-1269

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 03, 2012**

LEONARD GREEN, Clerk

James Fish,                                              )
                                                        )            ON APPEAL FROM THE
            Plaintiff-Appellant,                        )            UNITED STATES DISTRICT
                                                        )            COURT FOR THE EASTERN
v.                                                      )            DISTRICT OF MICHIGAN
                                                        )
Home Depot USA, Inc.,                                   )            O P I N I O N
                                                        )
            Defendant-Appellee.                         )

BEFORE:     SILER, McKEAGUE, and STRANCH, Circuit Judges.

**McKeague, Circuit Judge.**   After falling off an extension ladder that he rented from Home

Depot USA, Inc. ("Home Depot") and injuring his ankle, Plaintiff James Fish ("Fish") brought suit

claiming negligence, breach of implied warranty, and violation of the Michigan Consumer Protection

Act.  The district court awarded summary judgment to Home Depot on all counts and later declined

to rehear Fish's claims.  We affirm.

**I.  BACKGROUND**

Prior to renting the ladder at issue in this case, Fish had rented equipment five to ten times

at the Howell, Michigan Home Depot location and had also rented equipment at other Home Depot

stores in Royal Oak, Madison Heights and Southfield, Michigan.  On October 28, 2007, Fish rented

a 28-foot aluminum extension ladder ("the ladder") from the Home Depot store in Howell,

Michigan.  As part of the rental transaction, Fish was provided a rental agreement with written terms

and conditions (collectively, "the Rental Agreement"). Fish signed both the Rental Agreement and

an inspection tag for the ladder.

The inspection tag that Fish signed stated: "By signing this I accept this equipment in its

present condition." The Rental Agreement that Fish signed states as follows directly above Fish's

signature:

> I understand and agree that no representative of THE HOME DEPOT is authorized to make any order or written promise, affirmation, warranty or representation to me other than those reflected in writing to this agreement. I acknowledge that I have received the above-listed Equipment and that I agree to the terms and conditions printed on this page and on the other page(s) of this agreement. I understand and agree that this agreement cannot be modified, amended, rescinded or otherwise changed except by a writing signed by THE HOME DEPOT and me, and that I have read and understand the provision regarding modification of the agreement.

The Rental Agreement's terms and conditions, appearing on a separate page from where

Fish's signature appears, state, in pertinent part, as follows:

> 1. **NO TRANSFER OR WARRANTIES . . .** No warranties, expressed or implied, including, without limitation, durability, fitness for a particular purpose, merchantability, or condition have been made by Home Depot. I am renting the equipment "as is". Home Depot shall not be responsible for any loss, damage or injury to persons or property caused by the equipment. In no event shall Home Depot be liable to me for indirect, consequential or special damages, including lost use, revenue or profits.
> 2. **INDEMNIFICATION**. I agree to Indemnify and hold Home Depot, its officers, agents and employees harmless from and against all liabilities, claims, actions, proceedings, damages, losses, costs and expenses, including attorneys' fees, for all injuries or death of any person, or damage to any property occurring or arising from or connected with, my possession, use and return of the Equipment.
>  . . .
> 6. **CONDITION.** I acknowledge that I have examined the Equipment, seen it in operation (if appropriate) and that its condition is acceptable  . . .

Fish believed the ladder was in a good, safe condition when he rented it on October 28, 2007. Fish did not experience any problems with the functioning of the ladder when he used it on October 28, 2007. But the next day things went awry. According to Fish, on October 29, 2007, he set up the ladder in the same location and manner he had the day before, and ascended approximately twenty feet from the ground. At that point, Fish claims that the faulty cleat on the left ladder foot gave way and the feet kicked out, causing him to fall to the ground. Fish sustained injuries to his ankle.

The parties agree that there was nothing wrong with the ladder as designed or manufactured. However, Fish asserts that when his wife returned the ladder, one of the employees of Home Depot told her that the ladder with the bent foot was unsafe and stated that the employee himself would not have climbed the ladder. Fish further states that, after his wife returned the ladder, a Home Depot employee acknowledged the foot was bent and the ladder was decommissioned.

On June 10, 2008, Fish filed suit alleging negligence, breach of implied warranty, and violation of the Michigan Consumer Protection Act. After discovery was completed, Home Depot moved for summary judgment. On October 28, 2009, the district court granted the motion as to all counts. *Fish v. Home Depot USA, Inc.*, No. 08-12480, 2009 WL 3497790 (E.D. Mich. Oct. 28, 2009). On November 12, 2009, Fish filed a motion for reconsideration, asking the district court to apply a provision from UCC Article 2A pertaining to leases of consumer goods to this case. On February 1, 2010, the district court denied the motion for reconsideration, while declining to make a ruling as to the application of the Article 2A provision, because the court reasoned that finding for Fish on that issue would not change the outcome of its decision. *Fish v. Home Depot USA, Inc.*, 08-12480, 2010 WL 419980 (E.D. Mich. Feb. 1, 2010). This appeal followed.

## II.  ANALYSIS

Fish has styled his claims in a number of different ways.  In order to pierce the protective shield of the contract's indemnity and disclaimer clauses and allow the courts to reach his negligence and warranty claims, Fish invoked various provisions of Article 2 of the Uniform Commercial Code dealing with sales.  More recently, Fish has discovered Article 2A, which covers lease agreements like his rental.  Yet, even in this appeal, Fish invokes portions of the sales article in order to assert that Home Depot's disclaimer is invalid.  Finally, Fish relies on various sections of Michigan's Consumer Protection Act to assail the disclaimer.  In the end, all of these attempts fall short, the contract remains intact, and Home Depot is shielded from liability.

## A.  Standard of Review

We review the district court's denial of summary judgment de novo.  *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).  Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Home Depot bears the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Fish's claims.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fish must then present sufficient evidence from which a jury could reasonably find in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  We then consider whether, drawing all reasonable inferences in favor of Fish, Home Depot must prevail as a matter of law. *Harrison*, 539 F.3d at 516.

**B. Negligence**

Home Depot asserts that it is entitled to summary judgment with respect to Fish's negligence claim because Fish agreed to indemnify and hold Home Depot harmless for all injuries occurring or arising from the possession and use of the ladder. Fish contests this application of the indemnity clause, arguing (1) that the indemnity clause should not be interpreted to indemnify Home Depot against its own negligence; and (2) that the indemnity clause is prima facie unconscionable. We disagree on both points.

First, the Rental Agreement indemnifies Home Depot against its own negligence. Fish urges that the indemnity clause should not apply to Home Depot's acts because that was not the parties' intent. This is an appropriate departure point for our inquiry, since "[a]ll contracts, including indemnity contracts should be construed to ascertain and give effect to the intentions of the parties." *Zahn v. Kroger Co.*, 764 N.W.2d 207, 211 (Mich. 2009). Michigan law permits parties to contract to indemnify an indemnitee against its own acts of negligence. *Buffa v. Gen. Motors Corp.*, 131 F. Supp. 478, 480 (E.D. Mich. 1955). As a rule of construction in cases of unresolved ambiguity, indemnity contracts are strictly construed *contra proferentem* against the drafter and indemnitee. *DaimlerChrysler Corp. v. G-Tech Prof'l Staffing, Inc.*, 678 N.W.2d 647, 650 (Mich. Ct. App. 2003). An unambiguous indemnity contract will be enforced according to its terms. *Id.*

To support his argument, Fish relies on the former rule of construction that required unequivocal contractual language before an indemnification clause would cover an indemnitee's own

negligence. But Michigan courts have discarded that unequivocal-statement rule.[1] *See Vanden*

*Bosch v. Consumer Power Co.*, 230 N.W.2d 271, 272 (Mich. 1975); *see also Sherman v. DeMaria*

*Bldg. Co.*, 513 N.W.2d 187, 190 (Mich. Ct. App. 1994). "Instead, broad indemnity language may

be interpreted to protect the indemnitee against its own negligence if this intent can be ascertained

from 'other language in the contract, surrounding circumstances, or from the purpose sought to be

accomplished by the parties.'" *Sherman*, 513 N.W.2d at 190 (quoting *Fischbach-Natkin, Co. v.*

*Power Process Piping, Inc.*, 403 N.W.2d 569, 571 (Mich. Ct. App. 1987)).

Here, although there is not an unequivocal statement addressing indemnitee negligence, the

above-listed factors favor indemnification. Taking first the other language in the contract, just above

the indemnity clause, Fish agreed to the "No Transfer or Warranties" provision, which included the

---

[1] In *Vanden Bosch v. Consumers Power Co.*, 224 N.W.2d 900, 902 (Mich. Ct. App. 1974), the plaintiff sued Consumers Power when he was injured by a power line while working on a construction project on Ferro-Cast's property. *Id.* Ferro-Cast allowed Consumers Power to build and occupy a structure on its property, and as part of this agreement, had also agreed to indemnify Consumers Power against loss "'arising in connection with or as a direct or indirect result of a location of such building under the transmission and/or distribution line wires of said second party.'" *Vanden Bosch*, 230 N.W.2d at 272. The Michigan Court of Appeals held that indemnification should not be permitted because the "the agreement did not specifically state that it covered the negligent acts of the indemnitee[.]" *Vanden Bosch*, 224 N.W.2d at 908. But the Michigan Supreme Court reversed, holding that "[a]lthough not 'expressly' stated in the agreement, we are persuaded from our reading of that agreement, in light of the surrounding circumstances, that the parties intended that Consumers Power be indemnified against liability for its own negligence of the type precipitating this litigation." *Vanden Bosch*, 230 N.W.2d at 272. Without expressly overruling cases requiring an unequivocal statement addressing indemnitee negligence, the *Vanden Bosch* decision reversed the tide of Michigan case law in the area. *See id.* That was the last time the Michigan Supreme Court addressed this issue. However, the Michigan Court of Appeals has adhered to its abrogation of the unequivocal-statement requirement. *Paquin v. Harnischfeger Corp.*, 317 N.W.2d 279 (Mich. Ct. App. 1982); *see also Fischbach-Natkin, Co.*, 403 N.W.2d at 571; *Sherman*, 513 N.W.2d at 190.

statement "I am renting the equipment 'as is.'" Further, as part of the rental transaction, Fish also

signed the inspection tag, acknowledging that he accepted the ladder in its present condition. As for

the surrounding circumstances, Fish had rented from Home Depot five to ten times before, so he was

likely familiar with the setup of the Rental Agreement. Finally, with regard to the purpose of the

contract, Fish was renting and not purchasing the ladder, so he was undoubtedly aware that other

patrons had used the ladder before him. Because latent equipment problems can be caused by

ordinary wear and tear, Fish should have been aware of this possibility and the impact of the

contractual language in such event. All of these factors indicate the parties intended the indemnity

clause to include indemnitee negligence. Accordingly, the Rental Agreement indemnified Home

Depot against its own negligence.

Second, Michigan's Uniform Commercial Code does not render the Rental Agreement's

indemnity clause prima facie unconscionable. UCC § 2A-503(3), codified in Michigan at Mich.

Comp. Laws § 440.2953(3) (hereinafter "§ 503") renders the limitation of consequential damages

in the context of personal commercial goods rentals prima facie unconscionable, stating:

> (1) Except as otherwise provided in this article, the lease agreement may include rights and remedies for default in addition to or in substitution for those provided in this article and *may limit or alter the measure of damages recoverable under this article*.
>  . . .
> (3) Consequential damages may be liquidated under Section 2A-504, or may otherwise be limited, altered, or excluded unless the limitation, alteration, or exclusion is unconscionable. *Limitation, alteration, or exclusion of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable* but limitation, alteration, or exclusion of damages where the loss is commercial is not prima facie unconscionable.

>(4) Rights and remedies on default by the lessor or the lessee with respect to any obligation or promise collateral or ancillary to the lease contract are not impaired by this article.

UCC § 2A-503(3); Mich. Comp. Laws § 440.2953(3) (emphasis added).

The purpose of § 503 is to prescribe the ways in which parties to a rental contract may allocate risk by contracting to limit Article 2A damages. *See* § 2A-503(1). This section has no bearing on a claim for damages that are not "recoverable under this article," that is, available under Article 2A. *See id.* Fish asks this Court to ignore that language and apply § 503 to his common law claim of negligence. Fish points to *Cutway v. Equip. Dev. Co.*, No. 213439, 2000 WL 33529725 (Mich. Ct. App. Feb. 25, 2000), for the proposition that § 503(3) should be enforced in common law actions. But the plaintiff in *Cutway* brought an action under theories of negligence and implied warranty, and the court discussed § 503(3) only as a caveat, noting that a limiting clause was not prima facie unconscionable as applied to the commercial rental that was at issue in that case. *Id.* at *2.

Further, the Article contains its own limitation on what "consequential damages" comprise: "[c]onsequential damages resulting from a lessor's default include: . . . (b) injury to person or property proximately *resulting from any breach of warranty*." UCC § 2A-520; Mich. Comp. Laws § 440.2970 (emphasis added). Fish claims his personal injury resulting from negligence is a consequential damage. But for a personal injury to be considered a consequential damage, it must have resulted from a breach of warranty. *See* Mich. Comp. Laws § 440.2970. Thus, Fish's claim is belied by the statutory language. *See id.*

In the final analysis, we interpret the Rental Agreement's indemnity clause to protect Home Depot from its own negligence, and the clause survives Fish's UCC challenge, so the clause shields Home Depot from Fish's negligence claim. We therefore conclude that the district court correctly granted summary judgment as to negligence.

## C. Breach of Implied Warranty and Michigan Consumer Protection Act Claims

Fish claims that Home Depot breached the implied warranty of merchantability by leasing an unmerchantable ladder. In its motion for summary judgment, Home Depot claimed that it was entitled to judgment as a matter of law on Fish's implied warranty claim because (1) Fish testified that no representatives of Home Depot made any kind of representation about the anti-slipping characteristics of the ladder when he rented it; and (2) the written terms and conditions that Fish agreed to when he signed the Rental Agreement expressly disclaimed any warranties with respect to the ladder. Fish responds that the warranty disclaimer was ineffective because it was not conspicuous—as required by both Mich. Comp. Laws § 440.2316(2), which is taken from Article 2 of the Uniform Commercial Code; and Mich. Comp. Laws § 445.903(1)(p), which comes from the Michigan Consumer Protection Act ("MCPA"). Fish also claims the clause violated the MCPA requirement that consumers specifically consent to waive their rights because he did not sign his

initials next to each waiver separately. *See* Mich. Comp. Laws § 445.903(1)(t).[2] We find that the

language is conspicuous, and thus, uphold the waiver.

First, we consider Fish's UCC claims. A warranty of merchantability is implied into every

consumer rental contract unless it is expressly and conspicuously disclaimed. *See* UCC §§ 2A-

212(1), 2A-214(2). Inexplicably, despite the fact that UCC Article 2 applies to sales, Fish continues

to assert that UCC § 2-316, codified in Michigan at Mich. Comp. Laws § 440.2316(2) (hereinafter

"§ 2-316") should apply to his rental contract, even though UCC Article 2A-214, Mich. Comp. Laws

§ 440.2864(2) (hereinafter "§ 2A-214"), contains virtually the same language, and comes from UCC

Article 2A, which directly applies to consumer leasing. Despite this error, we apply § 2A-214 to his

contract with Home Depot. Section 2A-214 provides, in pertinent part:

> (2) Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it, the language must mention "merchantability", be by a writing, *and be conspicuous*. Subject to subsection (3), to exclude or modify any implied warranty of fitness, the exclusion must be by a writing *and be conspicuous*. Language to exclude all implied warranties of fitness is sufficient if it is in writing, *is conspicuous*, and states, for example, "There is no warranty that the goods will be fit for a particular purpose".
> (3) . . . (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", or "with all faults", or by other language that in common understanding calls the lessee's attention to the exclusion of warranties and makes plain that there is no implied warranty, if in writing and conspicuous.

---

[2] The district court also granted summary judgment with regard to Fish's claim that Home Depot violated Mich. Comp. Laws § 445.903(1)(c) by "representing the ladder which Plaintiff leased had characteristics and benefits which it did not have, specifically that it would not slide while a person was on it." Fish appears to have abandoned this claim on appeal—and for good reason. The district court summarily dismissed it by pointing directly to Fish's own deposition testimony stating that there were no such representations made. *See Fish*, 2009 WL 3497790 at *7. Thus, we do not revisit that argument here.

*Id.* (emphasis added); *compare* UCC § 2-316 (using nearly identical language, yet applying that language to sales).

The term "conspicuous" is defined in the UCC as follows:

A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: non-negotiable bill of lading) is conspicuous. Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. But in a telegram any stated term is "conspicuous". Whether a term or clause is "conspicuous" or not is for decision by the court.

Mich. Comp. Laws § 440.1201(10). Comment 10 to § 440.1201 states that the test for conspicuousness is "whether attention can reasonably be expected to be called to it." Fish contends the disclaimer was not conspicuous because the "disclaiming language is one eighth of an inch tall, not emboldened, not in a separate color, on a separate page of the contract from where Mr. Fish signed, and is not pinpointed by any conspicuous text elsewhere in the document." Several other attributes of the language favor conspicuity, such as (1) the instruction directly above Fish's signature stating that by signing the agreement Fish agreed to the terms and conditions; (2) the position of the warranty disclaimer as number one, at the very top of the page of terms and conditions; and (3) the bold and capitalized heading that read "NO TRANSFER OR WARRANTIES." A disclaimer should be presented so as to protect the consumer from surprise. *See Lumber Mut. Ins. Co. v. Clarklift of Detroit, Inc.*, 569 N.W.2d 681, 683 (Mich. Ct. App. 1997) (per curiam). So, whether a disclaimer can be considered conspicuous depends on whether a reasonable person ought to have noticed it, taking into account the guidelines laid out in the definition as well as the circumstances. *Id.*

The case of *Davis v. LaFontaine Motors, Inc.*, 719 N.W.2d 890 (Mich. Ct. App. 2006), provides an analogy for this case.[3] In *Davis*, the plaintiffs sued a car dealership after it discontinued complimentary manufacturer-warranty maintenance on Daewoo vehicles. *Id.* at 893. In *Davis*, the first page of the vehicle purchase order, which both plaintiffs signed, under the heading "IMPORTANT BUYER INFORMATION" provided a notice that clarified the express warranties were from the manufacturer only, the dealership was selling the car "as is" and instructed the buyer to see the paragraph on the opposite side that contained the actual disclaimer. *Id.* at 895. The disclaimer itself was entitled "WARRANTY DISCLAIMER" and the body of the disclaimer was printed in all capital letters. *Id.* Likewise here, the language above where Fish signed clearly disclaimed all express warranties and pointed him to the terms and conditions page. The terms and conditions, in turn, begins with the statement "NO TRANSFERS OR WARRANTIES" and the body of the disclaimer follows, using succinct language that indicates not only a disclaimer, but that the equipment is being rented "as is." Although the body of the text of this disclaimer is not entirely in capital letters, like the disclaimer text in *Davis*, the heading is in bold and capital letters, and the body uses short and readable language. All in all, this disclaimer at issue here was conspicuous, much like the disclaimer was in *Davis*.

Next, we consider Fish's contention that the waiver violated the MCPA. Fish claims a violation of Mich. Comp. Laws §§ 445.903(p), and (t), which prescribe the conspicuity and

---

[3]Although the provision in UCC Article 2A has not been widely applied in case law yet, case law interpreting UCC Article 2, such as § 2-316, can be used to interpret UCC Article 2A, such as § 2A-214. *See* James J. White & Robert S. Summers, Uniform Commercial Code § 14-4 (5th ed. 2011).

specificity of waivers, respectively. The MCPA offers no separate definition of "conspicuous." Thus, considering Michigan's Compiled Laws as a whole, the word conspicuous should be given the same meaning under the MCPA as it has under Michigan's Uniform Commercial Code. Therefore, based on the analysis above, the disclaimer satisfies subsection (p) as well as the UCC's conspicuity requirement. *See Davis*, 719 N.W.2d at 895.

In his brief on appeal, Fish curtly renewed his contention, pursuant to § 445.903(t), that he did not specifically consent to waive any of his rights or benefits provided by law, ostensibly because he did not sign his initials next to each waiver provision. However, as the district court concluded, the Michigan Court of Appeals has already rejected that proposition. *See Dean v. Haman*, No. 259120, 2006 WL 1330325, at *3 (Mich. Ct. App. May 16, 2006) (per curiam) (holding that, because the plaintiffs signed the contract, they had specifically consented to its terms for purposes of the MCPA); *see also Fish*, 2009 WL 3497790, at *4. So this argument also proves unavailing for Fish.

The waiver of implied warranties remains intact, and it effectively protects Home Depot from Fish's breach of warranty claims. Because Fish has failed to assail the Rental Agreement's provisions guarding Home Depot from liability, his claims were properly dismissed by the district court.

### III. CONCLUSION

Accordingly, we **AFFIRM** the district court's decision to grant Home Depot's motion for summary judgment.