# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES OVERBEEK and GRETCHEN OVERBEEK,

        Plaintiffs-Appellees,

v

FREMONT INSURANCE COMPANY,

        Defendant/Cross-Defendant-
        Appellant,

and

JOHN MATSON III, doing business as
MATSON'S RIVER SHARK OUTFITTERS,

        Defendant/Cross-Plaintiff,

and

AMCO INSURANCE COMPANY,

        Defendant-Appellee,

and

AUTO CLUB INS ASSOC,

        Defendant.

UNPUBLISHED
January 17, 2017

No. 329339
Grand Traverse Circuit Court
LC No. 2014-030594-NI

Before: O'CONNELL, P.J., and MARKEY and MURRAY, JJ.

PER CURIAM.

       Defendant Fremont Insurance Company (Fremont) appeals as of right the trial court's decision on summary disposition under MCR 2.116(C)(10) that Fremont's boat-owners' insurance policy provided coverage to plaintiff James Overbeek, who was injured during a boat launch accident. We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Overbeek hired John Matson III, who was doing business as Matson's River Shark Outfitters, to be his fishing guide on the Pere Marquette River.  On the day of the accident, Overbeek and Matson arrived at a boat launch site in Matson's truck, which was towing the boat on a trailer.  Matson backed the truck and trailer up to a ramp on the river bank and turned his truck off.  Matson believed he placed the truck in park, but later investigation indicated that he left the truck in drive.

As Matson lowered the boat down the ramp using a hand-crank winch on the trailer, the boat veered from the center of the ramp, and Matson pushed the boat to re-center it.  At that point, the truck began abruptly descending toward the river.  Overbeek testified that Matson yelled for him to "set the break," and as Overbeek reached into the truck's open door to grab the steering wheel, the door hit him and knocked him down the ramp.  Overbeek was seriously injured when his arm became pinned between the truck's tire and one of the ramp's concrete steps.

At the time of the accident, Fremont insured Matson through a marine insurance policy, which provided a variety of coverage.  Specifically, the "Boatowners Liability Endorsement" (BO-20) provided that Fremont would "pay damages for bodily injury or property damage for which an insured becomes legally liable resulting from the ownership, maintenance or use of the boat, boat motor or trailer . . ." (emphasis omitted).  However, BO-20 excluded from coverage "property damage or bodily injury resulting from transporting the insured boat(s) or trailers(s) on land" (emphasis omitted).  A second endorsement, the "River Guide Charter Use Endorsement" (BO-33) further extended coverage as follows:

> B.  Coverage is extended to include liability to passengers while they are engaged in activities ashore that are a normal part of the chartered fishing trip, including such activities as fishing, shore meals, calls of nature, sightseeing, and photography. . . .
>
> C.  Coverage is extended to include on-shore guide activities that do not involve use of the insured boat.  Loss arising from the ownership, maintenance or use of any land motor vehicle, whether licensed or not, is not included in this coverage extension. . . .

Following his accident, Overbeek brought claims against Matson and a variety of defendant-insurers, including Fremont and defendant-appellee AMCO Insurance.  In a motion for summary disposition under MCR 2.116(C)(10), Fremont argued that the policies precluded coverage because (1) the boat and trailer were being transported at the time of the accident, and (2) launching the boat was not an activity ashore or an on-shore guide activity.  The trial court ruled that the policies provided coverage and, subsequently, the parties stipulated to settle the claims pending Fremont's right to appeal.  Fremont now appeals.

## II.  STANDARD OF REVIEW

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223

(2013). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." This Court also reviews de novo "the proper interpretation and application of an insurance policy[.]" *City of Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 196; 702 NW2d 106 (2005).

### III. ANALYSIS

"Insurance policies are contracts and, in the absence of an applicable statute, are subject to the same contract construction principles that apply to any other species of contract." *Titan Ins Co v Hyten*, 491 Mich 547, 554; 817 NW2d 562 (2012) (quotation marks and citation omitted). The goal of contractual interpretation is to honor the parties' intent and to enforce the contract's plain terms. *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006). We discern the parties' intent from the contract's language. *Id*. If the contract's language is unambiguous, we interpret the contract as a matter of law. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). A contract is not ambiguous simply because the parties dispute the meaning of contractual language. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 567; 596 NW2d 915 (1999).

When construing an insurance policy, we must first determine whether the policy provides coverage and then determine whether an exclusion negates that coverage. *Hunt v Drielick*, 496 Mich 366, 373; 852 NW2d 562 (2014). The insured must prove coverage under the insurance policy, while the insurer must prove the applicability of an exclusionary clause. *Id*. We construe contractual terms in context, according to their commonly used meanings. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1990). We must interpret a contract in a way that gives every word, phrase, and clause meaning, and must avoid interpretations that render parts of the contract surplusage. *Klapp*, 468 Mich at 468. We may consult a dictionary definition to determine the commonly understood meaning of undefined contractual terms. *Auto Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015).

Fremont first argues that the policy does not provide coverage because the boat or trailer was being transported at the time of the accident. We disagree.

Endorsement BO-22 excluded coverage for "property damage or bodily injury resulting from transporting the insured boat(s) or trailer(s) on land[.]" The policy does not define "transporting," so we will consult a dictionary to define this term. The verb "transport" is commonly defined as "to carry, move, or convey from one place to another." *Random House Webster's College Dictionary* (1997). This verb is transitive, meaning that it requires a subject and a direct object—in this instance, someone must have been transporting the boat or trailer from one place or the other. Additionally, because "transporting" is a present participle form of the verb, it requires an ongoing action.

In this case, no one was moving the boat or trailer: they began sliding down the ramp as a result of a failure to properly secure the truck. Additionally, neither the boat nor the trailer were in the process of being transported because they were not being moved from one place to another. Transportation is an activity with a beginning and an end, with the action of "transporting" taking place while the object is in motion. When the boat and trailer arrived at the

boat launch, transportation ceased. The boat and trailer had arrived at the intended destination. When the boat and trailer arrived at the boat launch, transportation had ceased, though the truck would doubtlessly resume transporting the trailer at a later point.[1] We conclude that the trial court properly determined that the policy did not exclude coverage under the circumstances because Overbeek's injury did not result from transporting the boat or trailer.

Next, Fremont argues that paragraph 3(C) of the BO-33 endorsement did not provide coverage. Again, we disagree.

Paragraph 3(C) provides, "Coverage is extended to include on-shore guide activities that do not involve use of the insured boat. Loss arising from the ownership, maintenance or use of any land motor vehicle . . . is not included in this coverage extension. . . ." Because BO-22 does not exclude coverage under the general policy, determining whether the BO-33 endorsement also provided coverage is unnecessary and we decline to reach this issue. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues.").

We affirm.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Christopher M. Murray

---

[1] Fremont suggests that the trailer was still being transported because it would be moved at a later point. Fremont's analogy of the trailer being like a semi-truck stopped at a traffic light falls flat. A truck driver would not generally disembark from a truck stopped at a red light, as Matson disembarked from the truck to launch the boat in this case. The boat and trailer in this case were more like a semi-truck stopped at a facility to pick up cargo (with the driver engaging in tasks to accomplish that goal) before starting the next leg of its journey.