*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GARY A. WATSON,

        Plaintiff-Appellant,

v

CHAMPS AUTO SALES, INC.,

        Defendant/Cross-Defendant-Appellee,

and

CORNERSTONE UNITED, INC.,

        Defendant/Cross-Plaintiff.

UNPUBLISHED
March 10, 2022

No. 355394
Wayne Circuit Court
LC No. 18-015864-CZ

Before: JANSEN, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting summary disposition in favor of
defendant, Champs Auto Sales, Inc. ("defendant"), pursuant to MCR 2.116(C)(10) (no genuine
issue of material fact). We affirm.

## I. BACKGROUND

In May 2018, plaintiff purchased a 2013 Jaguar from defendant for his wife to drive.
Plaintiff purchased the vehicle "as is," but also purchased a service contract for the vehicle from
defendant Cornerstone United, Inc. ("Cornerstone"). Shortly after taking possession of the
vehicle, plaintiff took it to a Jaguar dealership to be inspected. The dealership recommended that
the cooling system be serviced, along with other work. Plaintiff opted not to have the work done
at that time. In July 2018, plaintiff noticed white smoke coming from the vehicle as he was driving.
After he turned the engine off, he was unable to restart the vehicle. The vehicle was towed to the
Jaguar dealership, which determined that the engine needed to be replaced. Cornerstone
maintained that the engine replacement was necessary only because plaintiff did not have the

-1-

cooling system serviced earlier, as recommended. It was willing to pay the cost of replacing the water pump, but not the entire engine.

Plaintiff brought this action against both defendant and Cornerstone. Cornerstone was later dismissed with prejudice after it reached a settlement with plaintiff. As relevant to this appeal, plaintiff brought claims against defendant for revocation of acceptance under MCL 440.2608, innocent or negligent misrepresentation, violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, and fraud. The negligent misrepresentation, MCPA, and fraud claims were all based on allegations that defendant's salesman misrepresented the scope of the Cornerstone service contract. After Cornerstone was dismissed, plaintiff filed a motion to amend his complaint, principally to clarify the remaining claims against defendant, most notably the MCPA claims. The trial court denied the motion on the basis that it was untimely filed and that defendant would be prejudiced if the amendments were allowed because discovery had closed. Defendant moved for summary disposition of the claims against it, primarily arguing that because it sold the vehicle to plaintiff "as is," with no warranties, plaintiff had no grounds for relief against it for the necessary repairs. The trial court agreed and granted defendant's motion under MCR 2.116(C)(10).

This appeal followed.

## II. MOTION TO AMEND COMPLAINT

On appeal, plaintiff first challenges the trial court's decision denying his motion to amend his complaint. A trial court's decision whether to grant or deny leave to amend pleadings is reviewed for an abuse of discretion. *Ormsby v Capital Welding, Inc,* 471 Mich 45, 53; 684 NW2d 320 (2004). "An abuse of discretion occurs when the decision of the trial court results in an outcome falling outside the principled range of outcomes." *Woods v SLB Prop Mgt, LLC,* 277 Mich App 622, 625; 750 NW2d 228 (2008) (quotation marks, citation, and alteration omitted).

After Cornerstone was dismissed, plaintiff moved to amend his complaint to clarify his claims against defendant and remove all claims brought only against Cornerstone. Plaintiff also made substantive changes to his MCPA claim to clarify how defendant allegedly violated that act by making representations regarding the scope of the service contract. The trial court denied the motion, explaining that it was untimely and would be prejudicial to defendant where discovery had already been completed.

Under MCR 2.118(A)(2), a trial court should freely grant leave to amend "when justice so requires."

> A motion to amend ordinarily should be granted in the absence of any apparent or declared reason, such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. If a trial court denies a motion to amend, it should specifically state on the record the reasons for its decision. [*Cole v Ladbroke Racing Mich, Inc,* 241 Mich App 1, 9-10; 614 NW2d 169 (2000) (citation omitted).]

Although plaintiff filed his motion to amend before the court heard defendant's motion for summary disposition, when a trial court grants summary disposition under MCR 2.116(C)(8), (9), or (10), it must give the opposing party an opportunity to amend their pleadings pursuant to MCR 2.118, unless amendment would not be justified or if it would be futile to do so. *Yudashkin v Holden,* 247 Mich App 642, 651; 637 NW2d 257 (2001); MCR 2.116(I)(5). "An amendment is futile if it merely restates the allegations already made or adds new allegations that still fail to state a claim." *Yudashkin,* 247 Mich App at 651 (quotation marks and citation omitted).

After reviewing plaintiff's proposed amended complaint, we agree with plaintiff that the trial court abused its discretion by denying plaintiff's motion to amend for the reasons stated. The trial court was primarily concerned that amendment would be prejudicial to defendant because discovery had already closed. However, plaintiff primarily sought to clarify his claims and explain why he believed that defendant violated the MCPA. He was not seeking to add new claims or facts that required additional discovery. Because the proposed amendments only sought to clarify plaintiff's claims, it would have been in the interest of justice to provide defendant with further notice of the claims against it. Nonetheless, reversal is not required because the proposed amendments would have been futile. As further discussed below, the proposed amendments would not have enabled plaintiff to avoid summary disposition on his claims against defendant. Therefore, to the extent that the trial court abused its discretion by denying plaintiff's motion to amend for the reasons stated, reversal is not required.

## III. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition under MCR 2.116(C)(10) and dismissing all claims. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court granted defendant's motion under MCR 2.116(C)(10). A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Maiden v Rozwood,* 461 Mich 109, 1120; 597 NW2d 817 (1999). In evaluating a motion under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. *Id*.; MCR 2.116(G)(5). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). A court may not assess credibility or determine disputed facts when reviewing a motion for summary disposition. *Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994).

Plaintiff argues that the trial court erred by dismissing his claim for revocation of acceptance under MCL 440.2608. Plaintiff alleged that he gave timely notice of his intent to revoke acceptance of the Jaguar in a letter to defendant, thereby entitling him to a full refund of the purchase price.

Generally, acceptance of goods by the buyer precludes rejection of those goods. MCL 440.2607(2). However, MCL 440.2608 provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

We agree with defendant that because plaintiff purchased the vehicle "as is," with no warranties, plaintiff had no reasonable expectation that the vehicle would be in any particular condition. Plaintiff's agreement to accept the vehicle "as is" meant that he assumed any risk related to the vehicle's condition. In *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 82; 719 NW2d 890 (2006), this Court, citing 1 White & Summers, Uniform Commercial Code (4th ed), § 8-4, pp 456-457, explained that where goods are sold "as is," the buyer assumes "the entire risk as to the quality of the goods." (Quotation marks omitted). Therefore, where a vehicle is purchased "as is," without a separate warranty or service contract from the seller, the vehicle, regardless of its condition or any defects, conforms to the contract and also necessarily conforms to the parties' legitimate contractual expectations. In *Davis*, 271 Mich App at 82, this Court stated:

[W]e hold that, for the purposes of revocation under MCL 440.2608, nonconformity is a failure of the goods sold to conform to legitimate expectations arising from the contract. In this contract, it was plainly agreed that "All goods, services and Vehicles sold by Dealer are sold 'AS IS' unless Dealer furnished Buyer with a separate written warranty or service contract or the used car sticker on the window on the vehicle indicates otherwise." Because plaintiffs purchased the vehicle "as is," the vehicle, even with the alleged defects, conforms to the contract and therefore necessarily conforms to the parties' legitimate contractual expectations. Plaintiffs got the vehicle for which they bargained; there was no nonconformity.

In the instant case, there is no genuine issue of material fact that plaintiff purchased the Jaguar "as is," without any warranties from defendant. Therefore, he necessarily received the vehicle he bargained for, regardless of its actual condition at the time of sale. He cannot prove a nonconformity entitling him to revoke his acceptance of the vehicle. *Davis*, 271 Mich App at 82. Accordingly, the trial court did not err by dismissing this claim under MCR 2.116(C)(10). Further, there also are no additional facts that plaintiff could add to support allowing him to amend this

claim. Because it is undisputed that plaintiff purchased the vehicle as is, any amendment to further clarify this claim would have been futile.

Plaintiff alleged in Count IV that defendant made oral and written misrepresentations concerning the service contract, and he relied on those misrepresentations to purchase the service contract.

"A claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Fejedelem v Kasco*, 269 Mich App 499, 502; 711 NW2d 436 (2006) (quotation marks and citations omitted). Even if a person is a recipient of a negligent misrepresentation, the person "is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying." *Id.* (quotation marks and citation omitted).

Plaintiff argues that defendant's salesperson negligently misrepresented that any repair costs would be covered under the service contract, and that this claim is not barred because the vehicle was purchased "as is." Plaintiff claims that the salesperson failed to accurately describe the terms of the service contract because he did not explain that there were exclusions or conditions to coverage. Plaintiff was aware, however, that the service contract was being provided by another party, not defendant. Plaintiff also admitted that he did not review the paperwork, including the brochure provided by Cornerstone, which disclosed that there were possible exclusions to coverage under the service contract. Plaintiff did not ask about exclusions and, therefore, he was never misled about any specific exclusions. Plaintiff also was not misled about whether any actions on his part might void coverage. Under these circumstances, plaintiff was not justified in relying on any general representations by defendant's salesperson concerning the coverage under the service contract. Even if plaintiff was allowed to amend his complaint, he does not allege any facts that would justify his reliance on the salesperson's representations concerning coverage, especially where he was provided with information from Cornerstone that disclosed that there were exclusions or limitations on coverage. Accordingly, the trial court did not err by dismissing this claim under MCR 2.116(C)(10).

Plaintiff also alleged in his complaint that defendant violated the MCPA by engaging in unfair sales practices in connection with the sale of the service contract. In his original complaint, plaintiff alleged that defendant violated MCL 445.903(1)(n), (p), (s), (y), (bb), and (cc), which provide:

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:

* * *

(n) Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction.

* * *

(p) Disclaiming or limiting the implied warranty of merchantability and fitness for use, unless a disclaimer is clearly and conspicuously disclosed.

* * *

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

* * *

(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits.

* * *

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

On appeal, plaintiff explains that the MCPA claims involve allegedly false statements made by defendant and its salesperson regarding the scope of the Cornerstone service contract. He claims that there was a gross discrepancy related to the salesperson's statement that the service contract would cover anything that happened to the vehicle and Cornerstone's offer to pay only $1,000 to cover the cost of replacing the water pump when it would cost $28,000 to fully repair the vehicle by replacing the engine.

Specifically, plaintiff argues that the trial court erred by dismissing his claims alleging violations of MCL 445.903(1)(s), (y), (bb), and (cc).[1] First, he contends that defendant violated MCL 445.903(1)(s) by failing to reveal a material fact that misled plaintiff regarding the scope of the service contract, which plaintiff could not have reasonably known. However, this argument lacks merit because plaintiff admitted that he was provided with the Cornerstone brochure that disclosed limitations on coverage and he did not read the terms of the contract he signed with Cornerstone. If he had read these documents, he would have known that there were exclusions and exceptions to coverage if he did not maintain the vehicle.

Plaintiff argues that defendant violated MCL 445.903(1)(y) because of a gross discrepancy between what the salesperson said was covered by the service contract and what was actually offered to plaintiff by Cornerstone. He claims that a gross disparity exists because the salesperson's statements supported replacing the engine at a cost of $28,000, but Cornerstone only offered plaintiff $1,000 to replace the water pump. Again, however, the salesperson was alleged to have made only a general statement that the service contract would cover something that went wrong with the vehicle, but plaintiff admitted that he did not read over the contract he signed or

---

[1] Plaintiff has abandoned any claim regarding MCL 445.903(1)(n) and (p).

-6-

inquire about exceptions to coverage, which were also mentioned in the brochure he was given. There were not any "gross discrepancies" between the salesperson's statements and the terms of the service contract where the salesperson merely stated, in general terms, that the service contract would cover future problems, but no specific assurances were made that all problems would be covered or that there were no exceptions or conditions to coverage.

Plaintiff argues that defendant violated MCL 445.903(1)(bb) because the salesperson made a "statement of fact material to the transaction" that caused plaintiff to "reasonably believe" that the service contract would cover all repairs when the contract actually contained exclusions or conditions for coverage. Again, the salesperson made, at most, only a general statement that plaintiff would be protected by the service contract and did not address any possible exclusions to coverage. As explained earlier, because plaintiff was aware that the service contract was being provided by another party, not defendant, and plaintiff was provided with a brochure that specifically stated that there were exclusions or limitations to coverage, and plaintiff did not ask about exclusions, and thus, was never misled about any specific exclusions, plaintiff cannot establish that he was entitled to reasonably rely solely on the salesperson's statements regarding coverage.

For the same reasons, plaintiff cannot establish that defendant violated MCL 445.903(1)(cc) by "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Again, under the circumstances, it was not reasonable for plaintiff to rely solely on the salesperson's general statement regarding coverage under the service contract as an unqualified statement regarding the service contract's scope of coverage.

Plaintiff appears to argue that amendment of his complaint was justified to add a violation of MCL 445.903(1)(a), which provides that it is an unfair or unconscionable practice for a seller to cause "a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." Plaintiff fails to explain how any statements about the scope of the service contract implicates this provision. A statement that the service contract would cover future repairs is not a statement relating to the source, sponsorship, approval, or certification of goods (i.e., the Jaguar), and plaintiff does not contend that he was misled about Cornerstone being the source of coverage under the service contract. And again, plaintiff admitted that he was given a copy of the Cornerstone brochure that described the coverage available under the service contract, including limitations on coverage. Plaintiff was not aware of the exclusions to coverage because he did not read the contract, not because the salesperson made confusing or misleading statements. Accordingly, amendment to add a violation of MCL 445.903(1)(a) was not justified.

In sum, plaintiff has not shown that there is a genuine issue of material fact to support any of his alleged claims under MCL 445.903(1)(s), (y), (bb), and (cc), or to support amending his complaint to add a claim under MCL 445.903(1)(a). Accordingly, the trial court did not err by dismissing plaintiff's MCPA claims under MCR 2.116(C)(10).

Plaintiff's claim for fraud was also properly dismissed by the trial court. Plaintiff argues that defendant can be liable for fraud because the salesperson falsely advised him that any problems with the vehicle would be covered under the service contract. In *Titan Ins Co v Hyten*, 491 Mich 547, 555; 817 NW2d 562 (2012), the Court observed:

> [T]he general rule is that to constitute actionable fraud it must appear: (1) [t]hat defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. [Quotation marks and citations omitted.]

In addition, to establish fraud, "the plaintiff must have reasonably relied on the false representation." *Cummins v Robinson Twp*, 283 Mich App 677, 696; 770 NW2d 421 (2009).

To the extent that the salesperson might have told plaintiff that the service contract would cover problems with the Jaguar, as explained earlier, there was no discussion about exclusions from coverage. Plaintiff has not provided any evidence that the salesperson knowingly or recklessly misrepresented the exclusions under the service contract with the intention that plaintiff would act upon those misrepresentations. Moreover, because plaintiff was aware that the service contract was being provided by another party, not defendant, and plaintiff was provided with a brochure that specifically stated that there were exclusions or limitations to coverage, plaintiff could not reasonably rely on the salesman's broad statement about the availability of coverage under the service contract as an unqualified statement of the scope of coverage under the contract. Again, nothing the salesperson did prevented plaintiff from reviewing the Cornerstone brochure and service contract to learn about the full scope of coverage available under the contract. Accordingly, the trial court did not err by dismissing plaintiff's fraud claim under MCR 2.116(C)(10).[2]

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

[2] Defendant also argues that plaintiff's tort claims are precluded because this case is fundamentally a breach-of-contract case. In light of our conclusion that the trial court properly dismissed all of plaintiff's claims, it is unnecessary to reach this issue.